Griffin, P.J.
 

 Following a jury trial, defendant Kenneth Heikkinen was convicted of aggravated assault, MCL 750.81a(l). The trial court sentenced defendant to one year in the county jail and ordered restitution in the amount of $3,075.02. Defendant appeals as of right. We affirm. In so doing, we address the novel question whether the trial court erred in instructing the jury to weigh the testimony of an accomplice with caution, notwithstanding the fact that the accomplice’s testimony, exculpatory in nature, was given on behalf of the defense rather than the prosecution. We hold that the trial court did not abuse its discretion in giving the jury instruction.
 

 i
 

 Defendant’s conviction arises out of a brawl that took place at the victim’s hunting camp in Marquette County. The victim, seventy-one-year-old Donald Theoret, invited defendant and his son, Richard Heikkinen, to his hunting camp to share a drink and “bury the hatchet” regarding perceived problems arising out of defendant’s unauthorized presence on and around Theoret’s private property. After several hours and several drinks, the conversation deteriorated and defendant reputedly attacked Theoret, causing him to sustain contusions and lacerations to the head.
 

 Defendant testified that he acted in self-defense, stating that after the parties had been drinking and talking for several hours, the conversation became
 
 *324
 
 hostile and Theoret unexpectedly swung a hatchet at him, grazing his head. This, according to defendant, precipitated a struggle on the floor of the cabin. Defendant testified that he called out to his son for help, whereupon Richard Heikkinen pulled Theoret off defendant. According to defendant, Theoret kept coming at him, defendant hit Theoret once in the face in self-defense, and then both defendant and Richard left the premises. Defendant testified that at that time, he was unaware of the extensive nature of the facial trauma suffered by Theoret as a result of the fight. Defendant admitted that even after learning there was a warrant for his arrest, he did not turn himself in because he did not have bail money. Defendant testified that his son assisted him in his evasion of arrest.
 

 Richard Heikkinen, the only other eyewitness to the assault in question, testified on his father’s behalf, opining that defendant had acted in self-defense. Richard insisted that he saw Theoret swing the hatchet at his father and then jump on him. Richard testified that he went to his father’s assistance and pulled Theoret off defendant. The Heikkinens then decided to leave. Richard testified that he never saw his father strike Theoret but conceded that defendant might have bitten Theoret while they were grappling on the floor. Richard admitted that he assisted his father in evading the police following the incident, commenting that “[a]nybody [would] do that for their father.”
 

 Defendant was originally charged with assault with intent to commit great bodily harm less than murder, MCL 750.84, but the jury convicted defendant of the
 
 *325
 
 lesser included charge of aggravated assault. Defendant now appeals.
 

 ii
 

 Defendant’s sole argument on appeal is that the trial court committed error requiring reversal when, over defendant’s objection, the court issued a cautionary “accomplice” instruction regarding the testimony of his son Richard, whose testimony supported defendant’s claim of self-defense. The trial court instructed the jury using a modified version of CJI2d 5.5 and 5.6,*
 
 [1]
 
 23reflecting the fact that Richard testified favorably
 
 *326
 
 on behalf of defendant, and stated in pertinent part as follows:
 

 Before you consider what Rick [Richard] Heikkinen said in court, you must decide whether he took part in the crime the defendant is charged with committing. Rick Heikkinen has not admitted taking part in the crime, but there is evidence that could lead you to think that he did. A person who knowingly and willingly helps or cooperates with someone else is [sic] committing a crime - else in committing a crime is called an accomplice.
 

 When you think about Rick Heikkinen’s testimony, first decide if he was an accomplice. If, after thinking about all the evidence, you decide that he did not take part in this crime, judge his testimony as you judge that of any other witness. But if you decide that Rick Heikkinen was an accomplice, then you must consider his testimony in the following way: Was the accomplice’s testimony falsely slanted to make the defendant seem not guilty because of the accomplice’s own interests, biases, or for some other reason?
 

 Defendant contends that the above instruction unfairly and impermissibly shifted the burden of proof, violated his constitutional right to present a defense, and denied him a fair trial.
 
 [2]
 
 We disagree.
 

 
 *327
 
 We review de novo defendant’s claim of an erroneous jury instruction.
 
 People v Hubbard (After Remand),
 
 217 Mich App 459, 487; 552 NW2d 493 (1996). The determination whether a jury instruction is applicable to the facts of the case lies within the sound discretion of the trial court.
 
 People v Perry,
 
 218 Mich App 520, 526; 554 NW2d 362 (1996), aff’d 460 Mich 55; 594 NW2d 477 (1999). This Court reviews jury instructions in their entirety to determine “if error requiring reversal occurred.”
 
 People v Aldrich,
 
 246 Mich App 101, 124; 631 NW2d 67 (2001). There is no error requiring reversal if, on balance, the instructions fairly present the issues to be tried and sufficiently protect the defendant’s rights.
 
 Id.; People v McFall,
 
 224 Mich App 403, 414; 569 NW2d 828 (1997).
 

 The credibility of an accomplice is a jury question.
 
 People v Sullivan,
 
 97 Mich App 488, 492; 296 NW2d 81 (1980). A jury may convict on the basis of accomplice testimony alone.
 
 Id.
 
 However, our courts have recognized that an accomplice may have a special interest in testifying, thus raising doubts concerning his veracity. It is therefore well established that when an accomplice testifies for the prosecution, the testimony is suspect and must be received only with great care and caution.
 
 People v McCoy,
 
 392 Mich 231; 220 NW2d 456 (1974);
 
 People v Lucas,
 
 138 Mich App 212, 221; 360 NW2d 162 (1984). As our Supreme Court explained in
 
 People v Reed,
 
 453 Mich 685, 691-692; 556 NW2d 858 (1996):
 

 
 *328
 
 In
 
 People v McCoy, supra,
 
 this Court created a rule that a trial judge may have an obligation to give a cautionary instruction sua sponte on accomplice testimony in certain situations. We stated:
 

 “For cases tried after the publication of this opinion, it will be deemed reversible error ... to fail upon request to give a cautionary instruction concerning accomplice testimony and, if the issue is closely drawn, it may be reversible error to fail to give such a cautionary instruction even in the absence of a request to charge. [392 Mich 240.]”
 

 This rule is motivated by the inherent weakness of accomplice testimony that is presented by the prosecution. The problem with such testimony is twofold. First, actual or implied threats or promises of leniency by the prosecutor will often induce an accomplice to fabricate testimony. Second, a jury may rely on otherwise incredible accomplice testimony simply because it is presented by the prosecutor. As the Court noted in
 
 McCoy,
 
 “ ‘a long history of human frailty and governmental overreaching for conviction has justified distrust in accomplice testimony.’ ”
 

 See also
 
 People v Jensen,
 
 162 Mich App 171, 186-190; 412 NW2d 681 (1987);
 
 People v Smith,
 
 158 Mich App 220, 228-230; 405 NW2d 156 (1987).
 

 However, the propriety of giving a cautionary accomplice instruction over a defendant’s objection when an accomplice testifies favorably on behalf of the defendant, rather than for the prosecution, is an issue of first impression in this state.
 
 [3]
 

 
 *329
 
 In
 
 Reed, supra,
 
 the Court found that the
 
 McCoy
 
 rationale for the obligation to instruct sua sponte did not apply where the accomplice was also the codefendant in a joint trial before a single jury who voluntarily testified in his own defense, providing an account differing from that of the defendant. Rejecting the defendant’s appellate claim that the trial court erred in failing to give a cautionary accomplice instruction sua sponte, the
 
 Reed
 
 Court held in pertinent part:
 

 [T]he problems with the accomplice’s testimony in
 
 McCoy
 
 are not present here. Unlike the accomplice in
 
 McCoy,
 
 Mr. Servant was not a prosecution witness. Rather, he was a codefendant who voluntarily testified in his own defense. Because Mr. Servant was on trial for first-degree murder, he obviously was not the beneficiary of any favorable deals from the prosecution. Thus, the rationale for the obligation to instruct sua sponte does not apply in this case.
 

 Most importantly, the trial court properly could not have given a cautionary instruction such as CJI2d 5.6. Here, Mr. Servant took the stand in his own defense. Any cautionary instruction on accomplice testimony would have asked the jury to view Mr. Servant’s testimony with suspicion and would have prejudiced his defense. Such an instruction in this case would certainly have been error requiring reversal.
 
 [Reed, supra
 
 at 693-694.]
 

 Defendant herein argues that
 
 Reed
 
 is “closely related” to the present circumstances and clearly supports the impropriety of giving a cautionary instruction in the case at bar. Defendant maintains that
 

 Richard Heikkinen was not testifying for the state, and there was clearly no promise of leniency. While he exoner
 
 *330
 
 ated himself as well as Defendant in his testimony, he could expect no benefit from the state. He was not charged as an aider and abettor in the assault on Theoret, but with being an accessory after the fact, and had already pled to the lesser offense of attempted resisting and obstructing and had served 90 days in jail. It is doubtful that the state could have proceeded against him by the time he testified without violating the double jeopardy protections against successive prosecutions. . . . Furthermore, even if he risked being charged, he could not anticipate that his testifying at Defendant’s trial would lead to favorable treatment for himself from the state: he was bringing himself to the attention of the government, he was testifying in contravention of the state’s theory and in support of the object of the state’s prosecution, and was leaving himself open to potential impeachment if prosecuted himself. Richard Heikkinen’s obvious bias was that he was testifying for his father, not that he had any hopes or expectations vis a vis the state.
 

 Nor was there the typical danger, described in
 
 Reed,
 
 that a jury would accept accomplice testimony simply because it was presented by the prosecution. A witness for the defense is given no such deference, and there is no danger that a jury will overlook bias or failures of logic or conflicts with known facts.
 

 On the other hand, the cautionary instruction, given in the context at bar, equally casts “doubt and suspicion” on the defense case, and would cause the jury to “scrutinize it differently than other testimony.” While error in any case, singling out the testimony of Richard Heikkinen for scrutiny reflected all the more directly on defendant himself, because he and Richard both testified to the same version of the night’s events.
 

 However, despite one obvious factual similarity between the two cases—the accomplices were not prosecution witnesses—there are dispositive dissimilarities that render
 
 Reed
 
 inapposite as guiding precedent. In
 
 Reed,
 
 unlike the present case, the accomplice was a codefendant who was tried jointly with the
 
 *331
 
 defendant before a single jury. The accomplice codefendant testified in his own defense and offered an account of the crime that differed from that of the defendant. Consequently, as the
 
 Reed
 
 Court noted,
 
 supra
 
 at 694, in this specific and narrow context the effect of a cautionary instruction would have been particularly prejudicial because “[a]ny cautionary instruction on accomplice testimony would have asked the jury to view Mr. Servant’s testimony with suspicion and would have prejudiced his defense.” These motivating concerns are not implicated in the present case, where Richard Heikkinen is not an accomplice/codefendant testifying in his own behalf and offering his own distinct version of events. In other words,
 
 Reed
 
 does not address the question presented in this case and in no way, expressly or implicitly, limits application of the accomplice instruction to prosecution witnesses.
 

 Defendant’s reliance on
 
 Cool v United States,
 
 409 US 100; 93 S Ct 354; 34 L Ed 2d 335 (1972), is similarly misplaced. In
 
 Cool,
 
 a single accomplice testified for the defense and offered testimony that was completely exculpatory. Over defense counsel’s objection, the trial court instructed the jury that
 

 “[i]f the testimony [of the defendant’s accomplice] carries conviction and you are convinced it is true
 
 beyond a rear sonable doubt,
 
 the jury should give it the same effect as you would to a witness not in any respect implicated in the alleged crime and you are not only justified, but it is your duty, not to throw this testimony out because it comes from a tainted source.”
 
 [Id.
 
 at 102 (emphasis in original).]
 

 The United States Supreme Court reversed the defendant’s conviction, stating:
 

 
 *332
 
 The clear implication of this instruction was that the jury should disregard [the accomplice’s] testimony unless it was “convinced it is true beyond a reasonable doubt.” Such an instruction places an improper burden on the defense and allows the jury to convict despite its failure to find guilt beyond a reasonable doubt.
 

 * * *
 

 In
 
 Washington v Texas
 
 [388 US 14; 87 S Ct 1920; 18 L Ed 2d 1019 (1967)], we held that a criminal defendant has a Sixth Amendment right to present to the jury exculpatory testimony of an accomplice. The instruction given below impermissibly obstructs the exercise of that right by totally excluding relevant evidence unless the jury makes a preliminary determination that it is extremely reliable.
 

 Moreover, the instruction also has the effect of substantially reducing the Government’s burden of proof. ... It is possible that [the accomplice’s] testimony would have created a reasonable doubt in the minds of the jury, but that it was not considered because the testimony itself was not believable beyond a reasonable doubt. By creating an artificial barrier to the consideration of relevant defense testimony putatively credible by a preponderance of the evidence, the trial judge reduced the level of proof necessary for the Government to carry its burden. Indeed, where, as here, the defendant’s case rests almost entirely on accomplice testimony, the effect of the judge’s instructions is to require the defendant to establish his innocence beyond a reasonable doubt.
 

 Because such a requirement is plainly inconsistent with the constitutionally rooted presumption of innocence, the conviction must be reversed ....
 
 [Cool, supra
 
 at 102-104.]
 

 Contrary to defendant’s assertion, far from either discouraging or prohibiting the use of cautionary accomplice instructions when an accomplice testifies in an exculpatory manner for the defense, the
 
 Cool
 
 Court observed that
 

 
 *333
 

 [ajccomplice instructions have long been in use and have been repeatedly approved. ... In most instances, they represent no more than a commonsense recognition that an accomplice may have a special interest in testifying, thus casting doubt upon his veracity. . . .
 
 But in most of the recorded cases, the instruction has been used when the accomplice turned State’s evidence and testified against the defendant.... No constitutional problem is posed when the judge instructs a jury to receive the prosecution’s accomplice testimony “with care and caution.” See, e.g.,
 
 United States v George,
 
 319 F2d 77, 80 (CA 6, 1963). Cf.
 
 United States v Nolte,
 
 440 F2d 1124 (CA 5, 1971).
 

 But there is an essential difference between instructing a jury on the care with which it should scrutinize certain evidence in determining how much weight to accord it and instructing a jury, as the judge did here, that as a predicate to the consideration of certain evidence, it must find it true beyond a reasonable doubt.
 
 [Cool, supra
 
 at 103-104 (emphasis added).]
 

 Indeed, in favorably citing
 
 United States v Nolte, supra
 
 at 1126, the
 
 Cool
 
 Court appears to have tacitly endorsed the principle that a cautionary accomplice instruction may be proper irrespective of which party calls the accomplice as a witness. In
 
 Nolte,
 
 the Fifth Circuit Court of Appeals held that the trial court did not abuse its discretion in giving a cautionary accomplice instruction, even though the accomplice was offering exculpatory testimony on behalf of the defendant:
 

 While a defendant has the right to have an accomplice testify in his behalf, it is the better practice, although not required, for courts to give a cautionary instruction concerning the testimony of an accomplice. . . . The policy behind the practice is obvious: to alert the jury to the possibility of perjured testimony. When an accomplice testifies for the prosecution he may have an interest in prevaricating
 
 *334
 
 in favor of the prosecution to obtain favors or even immunity. ... On the other hand, when one accomplice testifies for another, there is always the chance that each will try to “swear the other out of the charge.”
 

 [Defendant] insists, however, that the instruction may only be given when an accomplice testifies for the prosecution, and not when he testifies in behalf of the defendant. We disagree. It is clear that an accomplice’s credibility may be suspect, regardless of whether he testifies for the prosecution or the defense. . . . Whether an accomplice testifies for the prosecution or, as here, for the defense, it is within the trial judge’s discretion to instruct the jury to accept an accomplice’s testimony with caution.
 
 [Id.
 
 at 1126-1127.]
 

 Thus, in
 
 Cool
 
 the “constitutionally rooted presumption of innocence” was disrupted not because a cautionary accomplice instruction was given, but rather because the instruction, as worded, in effect reduced the prosecution’s burden of proof.
 

 Other courts addressing the issue at hand have determined that a trial court has discretion to instruct the jury to accept accomplice testimony with caution, regardless of whether the accomplice’s testimony is inculpatory or exculpatory. For instance, in
 
 United States v Bolin,
 
 35 F3d 306, 308 (CA 7, 1994), the court noted that “[t]here is sound reason for a jury to examine closely the testimony of a former accomplice because his credibility is suspect, no matter which side has called him to testify or whether his testimony is exculpatory or inculpatory.”
 

 See also
 
 United States v Urdiales,
 
 523 F2d 1245, 1248 (CA 5, 1975),
 
 United States v Simmons,
 
 503 F2d 831, 837 (CA 5, 1974),
 
 Booker v Israel,
 
 610 F Supp 1310, 1318 (ED Wis, 1985),
 
 United States v Morrone,
 
 502 F Supp 983, 990-999 (ED Pa, 1980), aff'd
 
 *335
 
 672 F2d 905 (CA 3, 1981),
 
 State v Anthony,
 
 242 Kan 493, 500-503; 749 P2d 37 (1988), and
 
 Hohman v State,
 
 669 P2d 1316, 1322-1323 (Alas App, 1983). But see contra
 
 Robinson v State,
 
 589 So 2d 437, 438 (Fla App, 1991);
 
 People v Dodd,
 
 173 Ill App 3d 460; 527 NE2d 1079 (1988);
 
 Commonwealth v Jones,
 
 490 Pa 599, 601-603; 417 A2d 201 (1980), and cases cited therein;
 
 People v Howard,
 
 130 Ill App 2d 496, 497-499; 263 NE2d 633 (1970).
 

 We find the reasoning of the above cases to be persuasive. Perhaps the most lucid statement supporting the neutral use of cautionary accomplice instructions irrespective of which party produces the accomplice testimony is contained in an Illinois case. In
 
 People v Brown,
 
 55 Ill App 3d 724; 370 NE2d 814 (1977), the Illinois appellate court held that the trial court erred in giving, at the request of the prosecution, an accomplice instruction following the testimony of the accomplice, a witness for the state, that purportedly exonerated the defendant. In a special concurrence, Justice J. Jones took exception to dicta in the majority opinion, which favored the use of the accomplice instruction only in instances when the accomplice testified favorably for the prosecution. Justice Jones stated:
 

 The role of an accomplice is acquired by participation in the particular crime, not by the posture in which the role player takes the witness stand. An accomplice may be called to testify by the State, by a co-defendant, as a court’s witness or in his own stead. By whomever called he may either implicate or exonerate the defendant, or he may give testimony which would do both. Generally, an accomplice will give testimony favorable to the party who calls him to testify but by no means is this a rule of universal application. In the case under consideration the accomplice,
 
 *336
 
 Michael, was called by the State but he gave testimony which the defendant thought was favorable to him. . . .
 

 In the final analysis the fact that a witness is an accessory to the crime in question is a matter of credibility. The factors which affect credibility are operative when an accessory testifies favorably for a defendant as well as when he testifies adversely to a defendant. The majority . . . indicate [s] that the sole motivation behind the testimony of an accomplice is the furtherance of an agreement with the prosecution. This position belies the reality that the accessory may be motivated by factors other than his relationship with the prosecution and his hope of obtaining favorable consideration therefrom. His impulse may well be, and often is, to exonerate his co-defendant. It is unrealistic to expect a fellow accused to be a stranger or an enemy of the accessory; more likely it is one with whom the accessory has a close and intimate relationship, and the impulse to help such persons would in some circumstances be as natural as to help themselves. I do not suggest that there is an honor among thieves but only say that the motivation of an accessory as a witness to testify this way or that is as diverse as the personalities who populate the prisons of the state.
 

 * * *
 

 I believe the proper rule for giving the accomplice instruction is that announced in
 
 [People
 
 v]
 
 Touhy
 
 [361 Ill 332; 197 NE 849 (1935)],
 
 [United States v] Nolte [supra],
 
 and
 
 [People v] Legear
 
 [29 Ill App 3d 884; 331 NE2d 659 (1975)]. As stated in the latter case:
 

 “However, we believe that a close examination of the circumstances of each case is necessary in order to determine the sensible application of the rule when the giving of the instruction is claimed to be reversible error. Whether an accomplice testifies for the defendant or for the State his credibility may be suspect, and the trial judge should have judicial discretion to decide whether to advise the jury to accept the accomplice’s testimony with caution.” [Brown, supra
 
 at 729-730 (Jones, J., specially concurring) (emphasis added).]
 

 
 *337
 
 We agree with this rationale and conclude, in the instant case, that the trial court did not abuse its discretion in giving a modified version of the standard jury instructions regarding the testimony of an accomplice, CJI2d 5.5 and 5.6, under circumstances in which the accomplice, defendant’s son and the only other eyewitness to the assault, gave exculpatory testimony on behalf of defendant, supporting defendant’s claim of self-defense. Unlike the offending instruction in
 
 Cool, supra,
 
 the challenged instruction herein does not predicate the jury’s acceptance of the accomplice’s testimony on finding it true beyond a reasonable doubt, thereby impermissibly altering the prosecution’s burden of proof, but rather merely admonishes the juiy to view such testimony with caution, a procedure acknowledged as proper by the
 
 Cool
 
 Court.
 

 Moreover, we find that the instruction was clearly warranted under the circumstances of the case. There were sound reasons to closely scrutinize the testimony of Richard Heikkinen. There were no other eyewitnesses to the assault and a resultant danger that in this “closely drawn” credibility contest,
 
 McCoy, supra
 
 at 240;
 
 Jensen, supra
 
 at 188-189, he would support his father’s claim of self-defense in an effort to swear defendant out of the charge.
 
 Nolle, supra
 
 at 1126. Richard Heikkinen had a strained relationship with Mr. Theoret before and after the assault occurred. Indeed, the evidence indicates that the father/son relationship may have affected his actions: Richard Heikkinen did not cooperate with the police, helped his father evade the police, and expressed the belief that aiding his father in this criminal behavior was something “[a]nybody [would] do . . . for their father.” These facts rendered Richard Heikkinen’s testimony
 
 *338
 
 “inevitably suspect,” and the cautionary accomplice instruction was therefore appropriate in light of the facts presented at trial.
 
 Aldrich, supra-, McFall, supra.
 

 Affirmed.
 
 [4]
 

 [1]
 

 CJI2d 5.5 provides:
 

 (1) Before you may consider what [name witness] said in court, you must decide whether [he/she] took part in the crime the defendant is charged with committing.
 
 [Name witness]
 
 has not admitted taking part in the crime, but there is evidence that could lead you to think that [he/she] did.
 

 (2) A person who knowingly and willingly helps or cooperates with someone else in committing a crime is called an accomplice.
 

 (3) When you think about
 
 [name witness]'s
 
 testimony, first decide if [he/she] was an accomplice. If, after thinking about all the evidence, you decide that [he/she] did not take part in this crime, judge [his/her] testimony as you judge that of any other witness. But, if you decide that
 
 [name witness]
 
 was an accomplice, then you must consider [his/her] testimony in the following way:
 

 CJI2d 5.6 provides:
 

 (1) You should examine an accomplice’s testimony closely and be very careful about accepting it.
 

 (2) You may think about whether the accomplice’s testimony is supported by other evidence, because then it may be more reliable. However, there is nothing wrong with the prosecutor’s using an accomplice as a witness. You may convict the defendant based only on an accomplice’s testimony if you believe the testimony and it proves the defendant’s guilt beyond a reasonable doubt.
 

 (3) When you decide whether you believe an accomplice, consider the following:
 

 
 *326
 
 (a) Was the accomplice’s testimony falsely slanted to make the defendant seem guilty because of the accomplice’s own interests, biases, or for some other reason?
 

 * ** *
 

 (4) In general, you should consider an accomplice’s testimony more cautiously than you would that of an ordinary witness. You should be sure you have examined it closely before you base a conviction on it.
 

 [2]
 

 Before defendant’s trial, Richard Heikkinen pleaded guilty of resisting and obstructing arrest and was not on trial with defendant. Defendant
 
 does not
 
 argue on appeal that the cautionary instruction was inappropriate because Richard Heikkinen was not an “accomplice” as that term has been defined by the Michigan courts. See, generally,
 
 People v Ho,
 
 231
 
 *327
 
 Mich App 178, 189; 585 NW2d 357 (1998);
 
 People v Allen,
 
 201 Mich App 98, 105; 505 NW2d 869 (1993). Furthermore, we conclude there was evidence from which the jury could have concluded that Richard “ ‘knowingly and willingly help[ed] or eooperat[ed] with someone else in committing a crime.’ ”
 
 Id.
 
 at 105, quoting CJI2d 5.5.
 

 [3]
 

 We note that in two unpublished opinions, this Court has addressed the issue at hand and concluded, in each case, that the trial court did not err in giving a cautionary accomplice instruction where the accomplices testified favorably on behalf of the defense. See
 
 People v Allen,
 
 unpublished opinion per curiam of the Court of Appeals, issued August 25, 2000 (Docket No. 216173), and
 
 People v Neff,
 
 unpublished opinion per curiam of the Court of Appeals, issued January 11, 2000 (Docket No. 206498). While unpublished opinions are not precedentially binding, MCR 7.215(C)(1);
 
 Detroit Free Press, Inc v Dep’t of State Police,
 
 233 Mich
 
 *329
 
 App 554, 557; 593 NW2d 200 (1999), we find the reasoning of these two cases persuasive and constructive in our analysis.
 

 [4]
 

 Even were we to assume arguendo that the trial court erred in giving the cautionary instruction, we nonetheless disagree with defendant that such error is constitutional in nature. As the
 
 Nolte
 
 court explained:
 

 * [T]he trial judge’s decision whether to give the instruction is not a matter requiring constitutional scrutiny. At most, it is “merely a part of the general conduct of the trial, over which the judge’s powers are discretionary, like his control over cross-examination, or his comments on the evidence.”
 
 [Nolte, supra
 
 at 1126, quoting
 
 United States v Becker,
 
 62 F2d 1007, 1009 (CA 2, 1933).]
 

 See also
 
 Cool, supra
 
 at 103.
 

 Such preserved nonconstitutional error is subject to a harmless error analysis. See
 
 People v Lukity,
 
 460 Mich 484, 495-496; 596 NW2d 607 (1999). Under the circumstances of this case, defendant has not sustained his burden of demonstrating that it is more probable than not that the error, if any, affected the jury’s verdict.