# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JAMES EARL KIMPLE a/k/a JAMES EARL
KIMPLE, JR.,

       Defendant-Appellant.

UNPUBLISHED
February 17, 2015

No. 318965
Calhoun Circuit Court
LC No. 2013-000077-FC

Before: RIORDAN, P.J., and MURPHY and BOONSTRA, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced as a second habitual offender to a prison term of 40 to 60 years for the second-degree murder conviction and a consecutive two-year term for the felony-firearm conviction. Defendant appeals by right, and we affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Juan Tyler Riddle was fatally shot in the back at approximately 9:10 p.m. in Albion on May 4, 2012. A few hours later, defendant surrendered himself to police. Defendant admitted to Detective Luis Tejada of the Albion Department of Public Safety that he had shot Riddle when they met on the street, but had done so because he feared Riddle was going to seriously injure him. Defendant was subsequently arrested and bound over for trial.

At trial, Tejada testified that defendant told him the shooting stemmed from a chance encounter with Riddle. Defendant was walking downtown when Riddle pulled up next to him in his car and rolled down the window on the passenger side. The two exchanged words. Riddle then pulled over and exited the car. Afraid that Riddle was going to draw a weapon out of the car, defendant pulled his 9mm handgun out of his waistband and fired twice in Riddle's direction, after which Riddle turned and ran away. Having accidentally ejected the handgun's clip, defendant paused long enough to reinsert it and pull the slide back to chamber another round, and then fired two or three more shots at Riddle as he fled. According to the forensic pathologists, one of these bullets hit Riddle in the back and passed upward through his heart, causing his death.

-1-

Tejada also identified inconsistencies between the evidence and aspects of defendant's statement. First, the bullet-hole evidence found at the scene contradicted defendant's explanation of the shooting. Second, the layout of the street was inconsistent with defendant's explanation of where he was when he first saw Riddle's car.

Defendant's girlfriend and mother both testified that defendant was afraid of Riddle and Riddle's brother, because they had long harassed him. Defendant's mother testified that the latest harassing incident had occurred the day before the shooting, when Riddle had knocked a meal out of defendant's hand and then stomped on it. This incident, defendant told Tejada, prompted him to begin carrying a handgun for protection.

Four days before trial, defendant filed his proposed jury instructions, which included what defendant describes as "self-defense instructions" on the use of deadly force in self-defense, CJI2d 7.15; the duty to retreat to avoid using deadly force, CJI2d 7.16; and past violence by the decedent, CJI2d 7.23.[1] After closing arguments, the trial court instructed the jury on first-degree murder, second-degree murder, manslaughter, and felony-firearm. The court did not give defendant's proposed self-defense instructions. Defendant's counsel stated he did not object to the jury instructions, and affirmed that he waived written claims and contentions.

The jury convicted defendant as described above. This appeal followed.

## II. INSTRUCTIONAL ERROR

First, defendant argues on appeal that the trial court erred by omitting the self-defense instructions from its instructions to the jury. However, defendant's express approval of the instructions constitutes a waiver that extinguishes error. *People v Kowalski*, 489 Mich 488, 504 n 27; 803 NW2d 200 (2011); *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000). When prompted by the trial court, defendant affirmatively approved the jury instructions:

*The Court*: [Defense counsel], do you have any objection to the instructions as given?

*[Defense counsel]*: I do not, your Honor.

*The Court*: Do you waive written claims and contentions?

*[Defense counsel]*: Yes, I do.

*The Court*: Do you approve of the verdict form?

---

[1] On October 30, 2013, our Supreme Court issued Administrative Order 2013-13, which among other things issued new Michigan Model Criminal Jury Instructions. Defendant's trial took place before the promulgation of these new instructions. The instructions referenced here from the Criminal Jury Instructions Second Edition (CJI2d) correspond to the new instructions as follows: CJI2d 7.15 – M Crim JI 7.15; CJI2d 7.16 – M Crim JI 7.16; CJI2d 7.23 – M Crim JI 7.23. The substance of the instructions has not changed.

*[Defense counsel]*: Yes, I have.

Additionally, even if we were to find that defendant did not waive appellate review of this issue and review it for plain error, *People v Grant*, 445 Mich 535, 547; 520 NW2d 123 (1994); *Nuculovic v Hill*, 287 Mich App 58, 63; 783 NW2d 124 (2010), we would find no error, because defendant failed to make a self-defense claim. Two of defendant's proposed jury instructions—CJI2d 7.15 ("Use of Deadly Force in Self-Defense") and CJI2d 7.16 ("Duty to Retreat to Avoid Using Deadly Force")—explicitly require the defendant to assert that he used deadly force in self-defense. Where defendant proposes the instruction but makes no such claim, it cannot be error for the trial court to omit the instruction. In light of the fact that defendant did not assert self-defense, but rather argued that defendant panicked and began shooting wildly during a confrontation with Riddle, there was no reason for the court to give these self-defense instructions.

Further, CJI2d 7.23 ("Past Violence by Complainant or Decedent") instructs the jury to consider evidence "that the decedent may have committed violent acts in the past and that the defendant knew about these acts" when considering whether a defendant "honestly and reasonably feared for his safety." CJI2d 7.23.1. Here, no one testified that Riddle was a violent and brutal person. The only act of violence attributed to Riddle was that he had knocked a chicken dinner out of defendant's hand and stomped on it. No one alleged that defendant and Riddle had ever fought or that Riddle had ever specifically threatened defendant harm. In the absence of evidence that Riddle committed specific violent acts, the trial court did not err in omitting CJI2d 7.23 from its instructions to the jury. See *People v Heikkinen*, 250 Mich App 322, 327; 646 NW2d 190 (2002) (stating that "whether a jury instruction is applicable to the facts of the case lies within the sound discretion of the trial court").

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next asserts that defense counsel provided ineffective assistance when he failed to object to the trial court's omission of the self-defense instructions.[2] Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). In order for ineffective assistance of counsel to justify reversal of an otherwise valid conviction, "a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*, 446 Mich 298, 303; 521 NW2d 797 (1994).

Again, as discussed above, the facts of the case are inconsistent with a self-defense theory. Defense counsel therefore attempted to mitigate the potential first degree murder verdict by pursing a manslaughter defense. Objecting to the court's omission of the proposed self-defense instructions would have been pointless and futile where defendant had not asserted self-

---

[2] Defendant first made this claim in his reply brief, and this Court granted his motion to accept it as an issue on appeal. *People v James Earl Kimple, Jr.* unpublished order of the Court of Appeals, entered December 11, 2014 (Docket No. 318965).

defense. See *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998) ("[T]rial counsel cannot be faulted for failing to raise an objection or motion that would have been futile.") Thus, defense counsel was not ineffective.

## IV. PROSECUTORIAL ERROR[3]

Defendant also contends that during closing arguments, the prosecution committed prosecutorial error by using language designed to inflame the prejudices and fears of the jury and making claims not based on the evidence presented at trial or on reasonable inferences arising from the evidence. Because defendant did not contemporaneously object to statements and request a curative instruction, this issue is not preserved for review by this Court. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). We review unpreserved claims of prosecutorial error for plain error affecting substantial rights. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008).

The role and responsibility of a prosecutor is to seek justice, not just to convict. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Green*, 228 Mich App 684, 693; 580 NW2d 444 (1998). Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial. *Brown*, 279 Mich App at 135. Error requiring reversal will not be found if the prejudicial effects of a prosecutor's comments could have been cured by a timely instruction. *People v Mayhew*, 236 Mich App 112, 123, 600 NW2d 370 (1999).

A prosecutor may not make a statement that is unsupported by the evidence, but he or she is free to argue the evidence and all reasonable inference arising from it as it relates to the theory of his case. *People v Unger*, 278 Mich App 210, 236, 241; 749 NW2d 272 (2008). A prosecutor may argue from the facts in evidence that the defendant or another witness is worthy or not worthy of belief. *People v Cain*, 299 Mich App 27, 43; 829 NW2d 37 (2012), vacated in part on other grounds 495 Mich 874 (2013).

Defendant identifies nine statements as instances of prosecutorial error. He claims that in the following seven statements, the prosecutor "improperly expressed his personal opinion about the justness of his case and . . . [defendant's] guilt and credibility" by "repeatedly calling [defendant] a liar and mocking his self-defense claim":

---

[3] Courts and litigants frequently have referred to claims such as that raised by defendant as "prosecutorial misconduct." This Court has recently stated that "the term 'misconduct' is more appropriately applied to those extreme . . . instances where a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct," and concluded that claims "premised on the contention that the prosecutor made a technical or inadvertent error at trial" are "more fairly presented as claims of 'prosecutorial error.' "*People v Cooper*, __Mich App __; __NW2d __ (2015) (Docket No. 318159), slip op at 7 (citation omitted).

(1) He claims or—you know—somehow he claims to the detective that he had to defend himself. How is he defending himself when he shoots somebody in the back with a handgun?

(2) You've heard lots of testimony from people. Some of them pretty clear [sic] were just lying.

(3) If you're going to kill someone and going to claim self-defense, you have to be in fear from [sic] their [sic] lives or serious injury of that nature. You haven't heard anything in this case that would even reach that remotely.

(4) He had chicken knocked out of his hand. Therefore, he decided to carry a gun. When he claims the victim in this case confronted him, wanting to fight, he said sure I'll fight with you. Walks up to him, pulls out a gun, starts shooting him.

(5) For no better reason apparently than chicken. For no better reason that he claims I was bullied. He said he was afraid. He wasn't afraid.

(6) He says in his statement that I was afraid. He wanted to fight me. I was just trying to defend myself. How?

(7) The only person we can rely on is him, and he's already proven himself to be a liar.

Contrary to defendant's assertion, none of these statements represent the prosecutor's personal opinion about the merits of the case or defendant's guilt or innocence. Rather, each statement is supported by the evidence presented at trial. Statements 1, 3, and 6 are supported by the evidence because they fairly invite the jury to consider whether defendant's statements to police that he was defending himself squared with his admission, also made to police, that he shot Riddle in the back while Riddle was running away.[4] As for statements 4 and 5, both Tejada and defendant's mother testified that defendant told them Riddle had bullied him and had knocked a meal out of his hands the day before the shooting. Tejada reported that defendant said this was one of the reasons he started carrying a gun for protection.

Statement 2 anticipates the court's later instructions regarding the credibility of witnesses. This meaning becomes clear when viewed in the following context of the prosecutor's remarks:

---

[4] As stated in Part II, *supra*, defendant did not raise a claim of self-defense; however, some of defendant's statements to police and his girlfriend may well have raised the specter of self-defense in the minds of the jurors. The prosecution was not at fault for addressing this potential concern. Further, defendant's statements concerning his panic and fear of Riddle were relevant to the elements of premeditation and intent to kill. See *People v Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998).

You've heard lots of testimony from people. *Some of them pretty clear* [sic] *were just lying.* Other people could have been making a mistake, but then again you've got transcripts. You've actually got audio recordings to consider in this case to determine what actually happened here. When you're determining what happens or what happened here you have to take what the witnesses have told you. You don't have to believe everything they said. If you believe they're lying about something, the court's going to tell you you can take away what you believe is the truth or the lie. You can take what you believe is the truth. Some people do lie about something and tell the truth about other things. It's up to you to determine the credibility of all the witnesses you've heard from today, yesterday, and the day before. It's up to you. It's totally in your hands. [Emphasis added.]

Statement 7 alludes to the inconsistencies in defendant's statements. Prior to making statement 7, the prosecutor juxtaposed the physical facts of the case with several of defendant's statements as reported by various witnesses in an effort to convince the jury that defendant had acted with premeditation and deliberation. Defendant's claim that Riddle had the passenger door of the car open looking for a weapon is belied by the fact that the bullets hit the outside of the door, not the inside. Defendant made statements to the police and his girlfriend that he was frightened of Riddle and panicked during their encounter because of that fear, yet he shot Riddle in the back as he was running away. Defendant claimed to have had a chance encounter with Riddle, yet he knew that Riddle lifted weights every night between 8:00 p.m. and 9:00 p.m. The prosecutor surmised that defendant waited for Riddle outside his gym with a gun, knowing that he always left around 9:00 p.m., and may have baited Riddle into a confrontation. "Who knows?" the prosecutor asked, rhetorically. "I wasn't there. The only person we can rely on is him, and he's already proven himself to be a liar." This statement, coming as it did at the end of a series of examples of inconsistencies between the evidence and defendant's statements could fairly be said to be a reasonable inference drawn from the evidence. Prosecutors are not required to state their cases in the blandest of terms, and they may argue from the facts that defendant is not worthy of belief. *Unger*, 279 Mich App at 239, 240. Statement 7 was a reasonable inference arising from the record evidence. *Id*. at 236.

Defendant also claims that the following two statements made during closing arguments are instances of prosecutorial error because they have no basis in the evidence presented at trial:

- (8) Did he fire it like gangster style, like that?

- (9) The first witness we had was Shane Bowling, Mr. Riddle's brother. He'd been driving through that town earlier that day with his mother. He testified to you that [defendant] was on the street corner saying come on, man, come on, man to him, trying to get him the core [sic]. Why? Well, because he had a gun on him, that's why. He wanted to shoot him. He wanted to shoot Bowling. He didn't get to shoot Bowling. He didn't get out of the car. So you've got Mr. Riddle.

Defendant claims that in these statements, the prosecutor used inflammatory language that had no basis in the evidence presented at trial and was designed merely to excite the jury's prejudices

-6-

and fear by implying that defendant was a "gangster" and portraying him as a "killer seeking out multiple victims."

Regarding statement 8, no evidence was presented that anyone involved was a gang member, wanted to be a gang member, or exhibited gang mannerisms. However, statement 8 was made in the context of explaining why the casings were found where they were, and how the clip might have fallen out of defendant's gun. Arguably, the prosecutor's reference to holding the gun "gangster style" was intended to do nothing more than suggest that defendant held the gun sideways. Even if the statement was an impermissible attempt to inflame the jury's fears and prejudices, defendant still fails to explain how this statement, in his words, "tipped the scale in favor of the prosecutor."

With respect to statement 9, defendant argues correctly that it is not supported by the evidence. Riddle's brother testified that he saw defendant on the night of May 4, 2012, and that defendant gestured toward him as if he wanted to fight him. Further, Tejada stated that defendant's mother said defendant had talked about killing Riddle's brother. However, the prosecutor's speculation that defendant taunted Riddle's brother because he had a gun and was prepared to kill him on the evening of May 4 finds no support in the record.

Nevertheless, the trial court's instructions cured any arguably prejudicial effects. Although the trial court did not expressly instruct the jury not to be swayed by inflammatory language, it did instruct the jury that the lawyers' statements and arguments were not evidence. Moreover, it reminded the jury of its oath to "return a true and just just [sic] verdict based only on the evidence and [the court's] instructions on the law." "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Viewing the record as a whole, there are no grounds on which to suspect that the prosecutor's comments were outcome determinative or resulted in a miscarriage of justice.

Finally, defendant also asserts that his counsel's failure to object to the prosecutor's statements constituted ineffective assistance of counsel. However, because the prosecutor's statements were not outcome determinative, counsel's failure to object does not constitute ineffective assistance. *People v Pickens*, 446 Mich 298, 303; 521 NW2d 797 (1994).

Affirmed.

/s/ Michael J. Riordan
/s/ William B. Murphy
/s/ Mark T. Boonstra