# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

THOMAS PURNELL THREATT,

        Defendant-Appellant.

UNPUBLISHED
August 16, 2018

No. 337429
Monroe Circuit Court
LC No. 16-243021-FH

Before: SWARTZLE, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Thomas Threatt, appeals as of right his jury trial convictions of delivery of less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), possession of less than 50 grams of cocaine with intent to deliver, MCL 333.7401(2)(a)(*iv*), and possession of less than 50 grams of heroin with intent to deliver,, MCL 333.7401(2)(a)(*iv*). The trial court sentenced Threatt as a subsequent drug offender, pursuant to MCL 333.7413(2), to 72 to 480 months' imprisonment on each count, to be served concurrently. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

In May 2016, Andrew Funk was facing unrelated felony charges. He offered information to law enforcement about a house on Bacon Street in Monroe County where he had previously purchased crack cocaine, and he agreed to participate in a controlled buy at that location in exchange for the dismissal of the charges against him. Funk called Threatt's phone number, a male answered, and Funk arranged to purchase drugs. The police searched Funk for narcotics and money, outfitted him with a wire, gave him three pre-recorded $20 bills to purchase the drugs, and allowed him to drive (under surveillance) to the house on Bacon Street. When Funk arrived, he went inside an enclosed porch and made contact with Threatt's "girlfriend or someone." He stated that the woman told him to wait for Threatt. Funk testified that after about ten minutes, Threatt arrived. Funk gave Threatt money, and Threatt gave him crack cocaine.

Based on the controlled buy, the police obtained a search warrant for the house. Threatt was present during the search, and a police detective retrieved $1,111 in cash from him, including the three pre-recorded $20 bill that Funk had used in the controlled buy. The police also discovered a plastic bag on top of the refrigerator containing 0.5 grams of crack cocaine and 0.6056 grams of heroin. The heroin was individually packaged in 15 "bindles" with torn pieces

-1-

of Keno lottery slips, which detectives testified is a usual manner in which heroin is packaged for sale. The crack cocaine was in a "corner portion" of a plastic bag and in a quantity a detective testified was consistent with delivery, not personal use. Additionally, officers found a digital scale, materials typically used for packaging narcotics, an envelope containing a letter to Threatt at a different address, and a letter addressed to Rashell Clark with handwritten "ledger communication" on the back, listing dollar figures associated with multiple names, two of which a detective recognized as the street names of narcotics dealers. Finally, the police also found a wallet containing Threatt's driver's license near the other items.

When questioned, Threatt denied any knowledge of or involvement with the narcotics found in the house or that he sold crack cocaine or heroin. When asked about whether Clark was selling narcotics out of the house, Threatt stated that "he didn't know what she was doing." Clark, however, testified that Threatt brought crack cocaine and heroin into her house on Bacon Street for the purpose of selling the drugs, that Threatt sold drugs from her house, and Threatt sometimes directed her to sell drugs from the house if he was not present or to take the drugs somewhere outside of the house to sell. She further testified that Threatt kept the money from the drug sales, which he usually kept with him, but she admitted that "sometimes" she kept the money for her own use. According to Clark, the drug selling activity happened "pretty much every day," and there were days when "multiple" people bought drugs at her house. Clark testified that, while she knew that the crack cocaine and heroin found during the search was in her house, the drugs belonged to Threatt.

## II. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Threatt first argues that there was insufficient evidence to support his convictions because he did not have actual or constructive possession of the drugs recovered by the police. We review de novo a challenge to the sufficiency of the evidence. *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). "[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

### B. ANALYSIS

The elements of possession with intent to deliver under MCL 333.7401(2)(a)(*iv*) are: "(1) that the recovered substance is [a controlled substance, such as cocaine or heroin], (2) that the [controlled substance] is in a mixture weighing less than fifty grams, (3) that defendant was not authorized to possess the substance, and (4) that defendant knowingly possessed the [controlled substance] with intent to deliver." *Wolfe*, 440 Mich at 516-517. Threatt argues that there is insufficient evidence that he knowingly possessed either cocaine or heroin. However, "[a] person need not have actual physical possession of a controlled substance to be guilty of possessing it." *Id.* at 519-520. "Possession may be either actual or constructive." *Id.* at 520. Constructive possession over narcotics exists where the evidence shows that the defendant "had

the right to exercise control of the [controlled substance] and knew it was present." *Id.* (quotation marks and citation omitted).

Threatt contends that he did not have the right to exercise control over the narcotics. In support, he notes that the home where the drugs were located was leased to Clark, he was not listed as an occupant on the lease, and he did not have a key to the house. Additionally, Threatt contends that although items belonging to him were in the house, his mail had a different address listed. Nevertheless, Clark's testimony established that he had a right to be at the house and was, in fact, frequently an occupant. Further, she testified that the drugs and drug paraphernalia located in the house belonged to Threatt, and she explained that he brought the drugs into her house so that he could sell them. Clark stated that Threatt sold cocaine and heroin from her house and kept the proceeds from the sales on his person. She also recounted that Threatt would sometimes direct her to give drugs to buyers in exchange for money when he was not at the house or would sometimes direct her to make sales at other locations. In addition, Funk's testimony shows that Threatt sold drugs from the Bacon Street address and kept the proceeds from the sales on his person. The police also searched Threatt's phone and recovered text messages indicative of narcotics trafficking out of the Bacon Street house. Viewing this evidence in the light most favorable to the prosecution, a jury could reasonably infer that Threatt had constructive possession of the cocaine and heroin located in the house.

## III. GREAT WEIGHT OF THE EVIDENCE

### A. STANDARD OF REVIEW

Threatt also argues that a new trial is warranted on the basis that the jury's verdicts were against the great weight of the evidence. Because he did not move for a new trial on this basis before the trial court, this issue is unpreserved. See *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003). We review unpreserved errors for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

### B. ANALYSIS

A jury's verdict is against the great weight of the evidence "only if the evidence preponderates heavily against the verdict so that it would be a miscarriage of justice to allow the verdict to stand." *People v Lemmon*, 456 Mich 625, 627; 576 NW2d 129 (1998). Threatt contends that his convictions are against the great weight of the evidence because Funk and Clark were both charged with felonies and received favorable deals from the prosecution in exchange for this testimony. He also noted that, to the extent that the police were able to corroborate Funk's testimony about the controlled buy, there was still evidence that they did not have constant surveillance. Further, he again reiterates that he lacked control over the house where the drugs were located. However, "[c]onflicting testimony and questions of witness credibility are generally insufficient grounds for granting a new trial." *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). Such exceptional circumstances include situations where "the testimony contradicts indisputable physical facts or laws, where testimony is patently incredible or defies physical realities, where a witness's testimony is material and is so inherently implausible that it could not be believed by a reasonable juror, or where the witness's testimony has been seriously impeached and the case marked by uncertainties and

discrepancies." *Lemmon*, 456 Mich at 643-644 (quotation marks, citations, and alterations omitted). None of those exceptional circumstances are present in this case.

Instead, as noted above, Clark testified that the drugs in the house belonged to Threatt, that he brought them into the house to sell them, and that he sold cocaine and heroin from the house. Further, Funk's testimony established that he conducted a controlled buy for the police. The pre-recorded bills used in the buy were later located on Threatt's person, and his cell phone contained numerous text messages indicating that he was selling narcotics from various locations, including the Bacon Street house. Further, there was ample evidence that the drugs located in the house were for sale, not for personal use. Thus, on this record, despite Threatt's challenges to the credibility of the witnesses against him, the evidence does not preponderate against the jury's verdict. *Lemmon*, 456 Mich at 627. Consequently, we find no plain error affecting Threatt's substantial rights. *Carines*, 460 Mich at 763-764.

## IV. JURY INSTRUCTIONS

### A. STANDARD OF REVIEW

Threatt next argues that the trial court should have given a cautionary instruction regarding the use of accomplice witness testimony under either M Crim JI 5.5 and M Crim JI 5.6 or M Crim JI 5.4. Alternatively, he contends that his trial lawyer's performance was constitutionally deficient because he did not request the court to provide such cautionary instructions. Threatt did not request such instruction or object to the instructions as given. Thus, he failed to preserve this instructional issue for appellate review. See *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003). Because defendant failed to preserve this issue, our review is limited to plain error affecting substantial rights, i.e., plain outcome determinative error. *People v Kowalski*, 489 Mich 488, 505; 803 NW2d 200 (2011). Additionally, "[w]hen no *Ginther*[1] hearing has been conducted, our review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

### B. ANALYSIS

"The credibility of an accomplice is a jury question." *People v Heikkinen*, 250 Mich App 322, 327; 646 NW2d 190 (2002). "[O]ur courts have recognized that an accomplice may have a special interest in testifying, thus raising doubts concerning his veracity. It is therefore well established that when an accomplice testifies for the prosecution, the testimony is suspect and must be received only with great care and caution." *Id.* The primary purpose of the accomplice witness instruction "is to raise the jury's awareness of the potential ulterior motives of the witness." *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012). The instruction "caution[s] the jury that the witness may have some reason not to testify truthfully." *Id.* Consistent with this purpose, M Crim JI 5.4 and 5.5 defines an accomplice and the cautionary instruction under M Crim JI 5.6 then "instructs the jury, among other things, to be careful about

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-4-

accepting the accomplice's testimony." *People v Allen*, 201 Mich App 98, 105; 505 NW2d 869 (1993). An accomplice is defined as a "person who knowingly and willingly helps or cooperates with someone else in committing a crime." M Crim JI 5.5; *Allen*, 201 Mich App at 105.

Based on the record before us, it would have been appropriate for the trial court to instruct the jury to view Clark's testimony as testimony from an accomplice. However, because Threatt did not request a cautionary instruction on the use of accomplice witness testimony, the trial court was not required to give such instruction. MCL 768.29; MCR 2.512(D)(2). Moreover, reversal based on the failure to give an accomplice jury instruction is not required where the accomplice's potential credibility problems have been plainly presented to the jury by other means, such as through cross-examination of the alleged accomplice. *People v Young*, 472 Mich 130, 143-144; 693 NW2d 801 (2005). Threatt's lawyer thoroughly cross-examined Clark with regard to her potential ulterior motives for testifying against Threatt. Further, in both his opening statement and closing argument, Threatt's lawyer stressed that, given the favorable deal she received in exchange for her testimony, Clark had a significant incentive to testify against Threatt. Additionally, although the trial court did not give the accomplice jury instructions, the jury was instructed on how to evaluate witness credibility. See *id*. at 144. Notably, the jury was instructed to consider whether the witness had a bias, prejudice, or personal interest in the case, whether there had been any promises that affected how a witness testified, and whether the witness had any reason to lie. Finally, the trial court instructed the jury that it could consider that Clark made an agreement with the prosecutor in exchange for testimony as it related to her credibility and as it may tend to show her bias or self-interest. Accordingly, even without the accomplice jury instructions, the jury was aware of Clark's potential credibility issues, self-interest, and bias in testifying against Threatt.

Furthermore, the prosecution presented evidence of Threatt's guilt beyond Clark's testimony, including testimony from Funk that he purchased cocaine from Threatt at the Bacon Street house and that testimony was corroborated by police surveillance, a search of Threatt's cell phone, and a search of Threatt's person. There was also ample evidence indicating that the drugs seized from the Bacon Street house were for sale, not personal use, and, based on the cell phone evidence, the jury could infer that Threatt was selling drugs. Thus, on the record before us, Threatt cannot demonstrate that the trial court's failure to provide a cautionary accomplice instruction amounted to plain error affecting his substantial rights. See *id*. at 143-144.

Moreover, assuming *arguendo* that Threatt's lawyer's assistance "fell below an objective standard of reasonableness" when he did not request the accomplice instruction, Threatt cannot show that "but for" that "deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). As indicated above, based on the opening statements, cross-examination of Clark, and closing argument by Threatt's lawyer, the jury was aware of Clark's credibility issues. Further, based on the jury instructions actually given, the jury knew to evaluate her testimony more carefully based on her personal interest in the case, the promises made to her, and her possible reasons to lie. More significantly, Clark's testimony was corroborated by Funk's testimony, evidence from Threatt's cell phone, and evidence seized during the search of the Bacon Street house. Consequently, Threatt has not demonstrated a reasonable probability that, but for his lawyer's failure to request a cautionary instruction on the use of accomplice witness testimony, he would have been acquitted. *Id.*

-5-

## V. SENTENCING

### A. STANDARD OF REVIEW

Threatt finally claims that his sentence of 72 to 480 months' imprisonment is not reasonable or proportionate to the seriousness of the circumstances surrounding the offenses because the weight of the substances was close to only one gram and his narcotics trafficking activity was "small enough" that without Funk's involvement it would not have attracted the attention of law enforcement.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). However, if a defendant's sentence is within the appropriate guidelines range, "the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." MCL 769.34(10); see also *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016) ("*Lockridge* did not alter or diminish MCL 769.34(10) . . . ."); *People v Jackson*, 320 Mich App 514, 527; 907 NW2d 865 (2017), lv pending (stating that a minimum sentence that falls within the appropriate recommended sentencing guidelines range "is presumptively proportionate and must be affirmed").

### B. ANALYSIS

Threatt's minimum sentencing guidelines range score, before any enhancement under MCL 333.7413(2), was 19 to 38 months.[2] Threatt does not dispute that his minimum sentencing guidelines range was properly calculated or argue that there was an error in scoring the guidelines or that the trial court relied on inaccurate information in determining his sentence. The trial court, pursuant to the double penalty allowed under MCL 333.7413(2), properly enhanced the guidelines range to 38 to 76 months. See *People v Williams*, 268 Mich App 416, 417, 430-431; 707 NW2d 624 (2005). The court then sentenced Threatt within the enhanced range to a minimum term of 72 months' imprisonment on each count to be served concurrently. Thus, Threatt's minimum sentence fell within the properly scored minimum sentencing guidelines range, as permissibly enhanced under MCL 333.7413, so Threatt's sentence was

---

[2] Threatt was prosecuted and sentenced as a subsequent drug offender under MCL 333.7413(2), which provides that "an individual convicted of a second or subsequent offense under this article may be imprisoned for a term not more than twice otherwise authorized or fined an amount not more than twice that otherwise authorized, or both." We note that MCL 333.7413 was amended by 2017 PA 266, effective March 28, 2018, which re-designated subsection (2) of the prior version as subsection (1).

"presumptively proportionate and must be affirmed" under MCL 769.34(10). *Jackson*, 320 Mich App at 527.[3]

Affirmed.

/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly

---

[3] In order to overcome the presumption that his sentence within the guidelines range is proportionate, "a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Bowling*, 299 Mich App 552, 559; 830 NW2d 800 (2013) (quotation marks and citation omitted). The circumstances cited by Threatt are not such "unusual circumstances" so as to render his presumptively proportionate sentence disproportionate. His arguments amount to a complaint that he should be given a break on sentencing because his drug-selling operation was so small that the police could not have detected it without the aid of an informant. The trial court, however, considered that Threatt had an extensive prior criminal record, was on probation at the time of the current offenses, and was selling crack cocaine and heroin from the home where of his young children lived.