# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DONALD MACKAY HALE, JR.,

        Defendant-Appellant.

UNPUBLISHED
June 28, 2016

No. 326661
Kent Circuit Court
LC No. 14-008436-FC

---

Before: STEPHENS, P.J., and BECKERING and GLEICHER, JJ.

PER CURIAM.

Defendant, Donald Hale, Jr., was convicted by a jury of armed robbery, MCL 750.529; first-degree home invasion, MCL 750.110a(2); unlawful imprisonment, MCL 750.349b; third-degree fleeing and eluding a police officer, MCL 750.479a(3); and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to 28 to 84 years' imprisonment on his armed robbery conviction; 15 to 30 years' imprisonment on his first-degree home invasion conviction; 12 to 22 years, 6 months' imprisonment on his unlawful imprisonment conviction; 3 years, 6 months to 7 years, 6 months' imprisonment on his third-degree fleeing and eluding conviction; and two years' imprisonment on his felony-firearm conviction. We affirm defendant's convictions but remand for further sentencing proceedings consistent with this opinion.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first challenges the sufficiency of the evidence with respect to each of the charged crimes, except for third-degree fleeing and eluding a police officer. We review challenges to the sufficiency of the evidence de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). Viewing the evidence in a light most favorable to the prosecution, we must determine whether the evidence was sufficient to justify the jury's finding that the essential elements of the charged crimes were proven beyond a reasonable doubt. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). All conflicts in the evidence must be resolved in favor of the prosecution. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Circumstantial evidence and all reasonable inferences drawn therefrom constitute satisfactory proof of the crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999).

-1-

Defendant does not dispute on appeal that the charged crimes occurred; he only challenges whether the evidence was sufficient to establish his identity as the individual who committed them. "[I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). A positive identification by a witness "may be sufficient to support a conviction of a crime." *People v Davis*, 241 Mich App 697, 699; 617 NW2d 381 (2000).

In this case, there was sufficient evidence supporting the jury's finding that defendant committed the charged offenses. Defendant made several admissions in jail calls after his arrest that implicated him in the crimes. For example, he stated that he was "sorry" and "probably going to be gone for a long time"; discussed the number of individuals present in the home during the home invasion and armed robbery and stated that one of the victims was lying about how many individuals were present; and admitted the identity of his accomplice—albeit through an alias. Defendant claims that his statements are not admissions of guilt, but rather are explainable under the circumstances of this case. We disagree and find that, when viewing this evidence in a light most favorable to the prosecution, *Harverson*, 291 Mich App at 175, it supports defendant's identity as the perpetrator of the charged offenses.

Defendant was also identified as the perpetrator of the charged offenses by multiple witnesses who were present in the home during the home invasion and armed robbery. Defendant argues for various reasons that each of these witnesses lacked credibility, thus undermining the reliability of the jury's verdict. However, credibility issues regarding identification testimony are questions for the trier of fact, which we will not disturb on appeal. *Davis*, 241 Mich App at 699-700. See also *People v Young*, 472 Mich 130, 143; 693 NW2d 801 (2005) ("Fundamentally, it is the province *of the jury* to assess the credibility of the witnesses."). It is reasonable to expect that witness testimony will differ in some respects. And here, although defendant criticizes the various witnesses based on relatively minor inaccuracies in their testimony, he ignores the fact that all of the witnesses consistently identified him as the perpetrator who entered the home with a shotgun. Thus, the witnesses' positive identifications of defendant as the perpetrator of the charged offenses supported the jury's ultimate finding.

Moreover, defendant's accomplice, Michael Whitfield, also testified regarding defendant's involvement in the charged offenses. "A jury may convict on the basis of accomplice testimony alone," and the credibility of an accomplice is a question for the jury. *People v Heikkinen*, 250 Mich App 322, 327; 646 NW2d 190 (2002). However, because "an accomplice may have a special interest in testifying," the accomplice's testimony is "suspect and must be received only with great care and caution." *Id.* In this case, the jury was made aware of the fact that the accomplice had not been offered any deals by the prosecution in exchange for his testimony. The jury, therefore, was able to weigh the accomplice's potential bias or prejudice and assess his credibility in this regard. See *Young*, 472 Mich at 143 ("[T]he jury should decide whether witnesses harbor any bias or prejudice."). Given the jury's verdict, it presumably found the accomplice's testimony credible, and we will not disturb that credibility determination on appeal. *Wolfe*, 440 Mich at 514-515.

Finally, other evidence presented at trial supported defendant's convictions of the charged crimes. After the home invasion and robbery occurred, and police began pursuit of potential suspects, defendant failed to stop his vehicle for a police officer and eventually fled on foot from the officer into a wooded area. Although evidence of flight is insufficient on its own

to sustain a conviction, flight indicates a "consciousness of guilt." *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). Additionally, officers searched defendant's vehicle and found evidence connected to the robbery, including a red bandana reported to be worn by one of the suspects, a sawed-off shotgun, and items stolen during the home invasion—a wallet belonging to one of the victims, approximately $6,000 in cash, and the jewelry taken from the victims' home. The evidence also established that duct tape had been used to restrain one of the victims during the offense, and a roll of duct tape was located in defendant's vehicle. Therefore, when viewing the evidence in a light most favorable to the prosecution, *Harverson*, 291 Mich App at 175, we find that sufficient evidence was presented to establish defendant's identity as the perpetrator of the charged crimes beyond a reasonable doubt.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant argues that defense counsel was ineffective for failing to present an expert witness to explain the inherent problems in eyewitness identification to the jury. Because this issue is unpreserved, our review is limited to mistakes apparent on the lower court record. *People v Fike*, 228 Mich App 178, 181; 577 NW2d 903 (1998). Defendant must establish that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's error, there is a reasonable probability that the outcome of trial would have been different. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defense counsel's decision not to present an eyewitness identification expert did not fall below an objective standard of reasonableness. The decision whether to call a witness is presumed to be a matter of trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). Contrary to defendant's claim that there was no strategy apparent in counsel's decision not to present an expert on eyewitness identification, the record supports that counsel may have had a "legitimate strategic decision" for failing to do so. See *People v Gioglio*, 296 Mich App 12, 22-23; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012). As is apparent from the record, defense counsel made a strategic decision to challenge the witnesses' identifications of defendant through cross-examination, rather than through an expert witness. Defense counsel may have decided to do so out of concern "that the jury would react negatively to perhaps lengthy expert testimony that it may have regarded as only stating the obvious," for example, that numerous psychological factors, including trauma, can impact the accuracy of eyewitness identification. See *People v Cooper*, 236 Mich App 643, 658; 601 NW2d 409 (1999). Defense counsel may also have feared that an expert witness's testimony might serve to support a conclusion that the four identifications made in this case appeared accurate.

Nevertheless, even if an expert witness on eyewitness identification may have been helpful to the jury, defense counsel's decision to instead attack the witnesses' credibility through cross-examination does not fall below an objective standard of reasonableness. Counsel is not ineffective for using a trial strategy that is ultimately unsuccessful. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2002). Therefore, we decline to find counsel ineffective in this regard.

## III. DEFENDANT'S STANDARD 4 BRIEF

In addition to the previously addressed arguments raised by defendant's appellate counsel, defendant filed a Standard 4 brief raising numerous issues. Defendant first argues that admission of identification testimony by three witnesses—Kristina Hernandez, Esteban Perez, and Jordan Perez—violated his due process rights. Because this argument was not preserved, review is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

Defendant cannot show plain error affecting substantial rights with regard to the various witnesses' identifications. First, neither Esteban nor Jordan was subjected to an identification procedure by law enforcement officers. Instead, defendant asserts a due process violation on the basis that these witnesses either independently viewed or were shown by a family member a photograph of defendant before trial under impermissibly suggestive circumstances. Defendant, however, provides no legal authority supporting that an identification procedure without police involvement may constitute a due process violation. To the contrary, the United States Supreme Court in *Perry v New Hampshire*, ___ US ___; 132 S Ct 716, 730; 181 L Ed 2d 694 (2012), held that "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an identification when the identification was not procured under unnecessarily suggestive circumstances *arranged by law enforcement*." (Emphasis added). Thus, due process concerns are not implicated by a pretrial identification unless the identification is "taint[ed]" by "improper state conduct." *Id.* at 728. Without improper state conduct, it is the jury's role to determine the reliability of such evidence, subject to the "safeguards built into our adversary system." *Id.* at 728-729. Because defendant has not established that Esteban's and Jordan's identifications of defendant were tainted by improper state conduct, we find no plain error affecting defendant's substantial rights, and defendant's due process challenge fails with respect to their identification testimony. *Carines*, 460 Mich at 763.

Second, Hernandez was subject to a show-up identification procedure arranged by law enforcement; thus, due process concerns are implicated by evidence of her identification of defendant. *Perry*, 132 S Ct at 730. An identification procedure constitutes a denial of due process when it is "unnecessarily suggestive and conducive to irreparable misidentification." *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001). A defendant must establish that, in examining the totality of the circumstances, the identification procedure used was so suggestive that it resulted in a substantial likelihood of misidentification. *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993). Relevant factors to consider include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.*, quoting *Neil v Biggers*, 409 US 188, 199-200; 93 S Ct 375; 34 L Ed 2d 401 (1972).

Concerning her ability to view the suspect at the time of the crime and her degree of attention, Hernandez testified that the robbery lasted approximately 5 to 10 minutes from the time the two suspects broke into her home. She testified that she was able to observe defendant for "more than enough time to be certain" of his identity. Although Hernandez testified that defendant's face was partially obscured by a bandana, she was able to view his hair and eyes,

and she was able to observe his clothing. Additionally, she explained that she was fully focused on defendant because he was the individual carrying a gun. In regard to the accuracy of Hernandez's initial description, we note, perhaps because this issue is unpreserved, that there is little information concerning Hernandez's initial description of the perpetrator. However, we have gleaned certain details from her trial testimony concerning what she told a 911 operator and concluded that, although there were a few discrepancies, her description was fairly accurate to defendant's appearance at the time of his arrest. Hernandez indicated that the suspect had dreadlocks, and defendant, when apprehended, had dreadlocks, albeit dreadlocks that were pulled into a ponytail. He also wore camouflage pants at the time of his arrest, which is generally consistent with Hernandez's description given in a 911 telephone call that the suspect wore camouflage shorts. However, as defendant points out, Hernandez never described defendant's heavily-tattooed arms, despite consistently stating that defendant wore a sleeveless shirt.

Finally, concerning the last two factors, Hernandez testified that she was certain about her identification of defendant. Additionally, defendant was arrested shortly after the incident occurred, and Hernandez was taken by officers to identify him in a show-up procedure the same evening of the robbery and home invasion.

Examining the totality of the circumstances we find that, although defendant was singled out during the show-up procedure, defendant fails to show that the procedure used was so necessarily suggestive as to lead to a substantial likelihood of misidentification. *Kurylczyk*, 443 Mich at 302; *People v Colon*, 233 Mich App 295, 304; 591 NW2d 692 (1998) ("Simply because an identification procedure is suggestive does not mean it is necessarily constitutionally defective."). Hernandez had a good opportunity to view defendant during the offense without significant distraction, she was certain in her identification of defendant at the show-up, and the show-up occurred in the same night as the offense. A prompt confrontation after the crime was committed promotes fairness by assuring greater reliability. See *People v Winters*, 225 Mich App 718, 725; 571 NW2d 764 (1997). It does not appear that the police acted for a reason other than to determine whether defendant was connected with the robbery, and, thus, subject to arrest. *Id.* at 727. Moreover, while there were a couple of inaccuracies between Hernandez's initial description of the suspect and defendant's appearance at the time of his arrest, her description was, generally, accurate. Finally, the fact that Hernandez initially misidentified defendant's accomplice does not affect this analysis. Hernandez admitted that her focus was primarily on defendant during the offense, given that he was carrying a weapon. She also testified that she was able to view defendant's face better than the alleged accomplice's face during the show-up procedure. Furthermore, Hernandez admitted that she made a misidentification regarding the second suspect, but she never wavered in her certainty as to defendant. We therefore find that no plain error requiring reversal existed with respect to Hernandez's identification of defendant, and that defendant's due process argument is without merit.

Next, defendant claims that the prosecutor committed misconduct by vouching for the credibility of witnesses, disparaging defense counsel, arguing facts not in evidence, and appealing to the sympathy of the jury. We generally review challenges of prosecutorial misconduct de novo. *People v Akins*, 259 Mich App 545, 562; 675 NW2d 863 (2003). We decide issues on a case-by-case basis by reviewing the pertinent part of the record and evaluating the prosecutor's conduct in context. *Id.* However, because defendant failed to preserve his

issues for appeal through a contemporaneous objection and request for a curative instruction at trial, *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010), our review is limited to plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 763-764.

Prosecutors are given "great latitude regarding their arguments and conduct," *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (citations and quotation marks omitted), and are free to argue the evidence and any reasonable inferences arising therefrom in presenting their theory of the case, *People v Goodin*, 257 Mich App 425, 433; 668 NW2d 392 (2003), citing *Bahoda*, 448 Mich at 282. While a prosecutor is free to argue from the facts that a witness should be believed, a prosecutor may not vouch for the credibility of a witness by implying that he or she possesses "special knowledge" of the witness's truthfulness. *People v McGhee*, 268 Mich App 600, 630; 709 NW2d 595 (2005).

Defendant first claims that the prosecutor improperly vouched for Hernandez's credibility during opening statement by stating that Hernandez "did the right thing" when she informed police that she had initially misidentified a different suspect as defendant's accomplice in the charged offenses. This comment in no way insinuates that the prosecutor possessed "special knowledge" of Hernandez's truthfulness. Thus, we find no plain error with respect this statement.

Defendant next, under the auspices of a prosecutorial misconduct challenge, argues that Detective Thomas Heikkila improperly vouched for the credibility of the prosecution witnesses. Notably, however, the testimony challenged by defendant was not elicited by the prosecutor, but by defense counsel. See *People v Dobek*, 274 Mich App 58, 70-71; 732 NW2d 546 (2007) (focusing on whether the *prosecutor* elicited the challenged testimony in good faith). Thus, we find defendant's claim of prosecutorial misconduct to be meritless in this regard.[1]

Next, defendant argues that the prosecutor committed misconduct by disparaging defense counsel during her rebuttal closing argument. "A prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury." *People v Watson*, 245 Mich App 572, 592; 629 NW2d 411 (2011). However, the prosecutor's remarks must be read in context, *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996), and "must be considered in light of defense counsel's comments," *Watson*, 245 Mich App at 592-593. In this case, each of the challenged remarks was made in direct response to defense counsel's closing argument. "[A]n otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument." *Kennebrew*, 220 Mich App at 608. Thus, we find no plain error affecting defendant's substantial rights with respect to the prosecutor's remarks regarding defense counsel.

---

[1] Moreover, to the extent Heikkila volunteered his testimony and defendant's argument could be construed as a claim that Heikkila improperly commented on the credibility of another witness, we decline to find plain error requiring reversal because, given the strength of the evidence against defendant, there was no prejudice.

Defendant next argues that the prosecutor argued a fact not in evidence by asserting that defendant wore a white undershirt in which he was arrested during the robbery. Defendant, however, fails to provide a record citation to the challenged statement, as required by MCR 7.212(C)(7). Thus, we need not consider his claim of error. *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008). However, even if the prosecutor made the comment as alleged, the argument was a reasonable inference to draw from Hernandez's testimony regarding the suspect's clothing, specifically that he was wearing a "tank top" with "thicker straps than an undershirt," during the commission of the offense. *Goodin*, 257 Mich App at 433. Therefore, no plain error has been established in this regard.

Lastly, defendant argues that the prosecutor improperly appealed to the sympathy of the jury and injected issues broader than defendant's guilt or innocence by asking the jury to return a guilty verdict "on behalf of" the victims. In *People v Truong (After Remand)*, 218 Mich App 325, 339-340; 553 NW2d 692 (1996), we rejected a similar argument on the basis that it "neither injected issues broader than [the defendant's] guilt or innocence of the charges nor encouraged the jurors to suspend their powers of judgment." Accordingly, defendant has not established plain error resulting from the prosecutor's remark.[2]

Defendant next presents several claims of ineffective assistance of counsel in his Standard 4 brief. Because a panel of this Court denied defendant's motion to remand for a *Ginther*[3] hearing to create a factual record in support of these claims, our review is limited to mistakes apparent on the lower court record. *Fike*, 228 Mich App at 181.

Defendant first claims that counsel was ineffective for failing to admit the entirety of a jail call into evidence. According to defendant, only a portion of the call was played for the jury, which resulted in his statements being played out of context. Upon our review of the record provided to us, however, it does not establish that only a portion of the jail call was played. Defendant has the burden of establishing the factual predicate for his claim, and he has failed to do so here. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Accordingly, we do not find counsel ineffective on this basis.

Defendant next argues that defense counsel was ineffective for advising him not to testify at trial. "[A]n accused's decision to testify or not is a strategic decision best left to an accused and his counsel." *People v Martin*, 150 Mich App 630, 640; 389 NW2d 713 (1986). Here, defendant agreed on the record at trial that he understood his right to testify, but stated that he was "comfortable" with his decision not to do so. Defendant points to nothing in the record

---

[2] Because no errors have been established with respect to the prosecutor's statements at trial, we also reject defendant's argument that he is entitled to reversal based on the cumulative effect of the alleged errors. *Dobek*, 274 Mich App at 106. Additionally, because any objection to the challenged remarks would have been futile, we reject defendant's argument that his counsel was ineffective for failing to object. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

supporting that he wished to testify, but defense counsel prevented him from doing so. Thus, defendant's claim that counsel was ineffective in this regard is without merit.

Next, defendant argues that defense counsel was ineffective for failing to admit defendant's telephone records into evidence. This claim is entirely unsupported by the record. Defendant claims that his telephone records would show that he received a telephone call while driving with Whitfield before the offense, contrary to Whitfield's testimony that defendant placed a call. However, our review of the record shows that Whitfield actually testified that defendant received a call. Further, defendant claims that admission of his telephone records would have supported his defense that he "was only going to the house to buy marijuana and was surprised when the two people he drove there turned it into an armed robbery." We, however, cannot discern how mere telephone records would have demonstrated so much. Thus, because defendant has not established that counsel's failure to admit the telephone records fell below an objective standard of reasonable, we decline to find that counsel was ineffective in this regard. *Carbin*, 463 Mich at 600.

Defendant also argues that counsel was ineffective for failing to request DNA testing of the red bandana located in defendant's vehicle on the night of the incident. The decision whether to offer evidence at trial is presumed to be a matter of trial strategy, *Rockey*, 237 Mich App at 736, and it appears here that counsel made the strategic decision to proceed without having the bandana tested. Part of the defense theory was that reasonable doubt stemmed from the State's failure to test the bandana for DNA evidence, implying that the State failed to do so because the results may have been favorable to defendant's case. Moreover, there was an obvious risk that DNA testing would have confirmed the presence of defendant's DNA on the bandana, and, contrary to defendant's argument, it would have been difficult for defense counsel to minimize the damaging effect of this evidence. Accordingly, because defendant has not overcome the presumption that defense counsel made a strategic decision not to request DNA testing of this evidence, defendant's claim of ineffective assistance of counsel fails. *Carbin*, 463 Mich at 600.

Next, defendant argues that counsel was ineffective for failing to request a mere-presence jury instruction. See M Crim JI 8.5. "A criminal defendant has the right to have a properly instructed jury consider the evidence against him," but a trial court is only required to give an instruction if the requested instruction is supported by the evidence. *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995), mod on other grounds 450 Mich 1212 (1995). It is readily apparent from the plain language of the mere-presence instruction that the instruction only applies when the defendant is being charged on an aiding and abetting theory. See M Crim JI 8.5. Defendant was not charged as an aider and abettor in this case, but rather as the principal actor who actually committed the charged offenses. Thus, the mere-presence instruction was not proper under the circumstances of this case, and defense counsel was not ineffective for failing to make a futile request. See *Thomas*, 260 Mich App at 457. Nevertheless, even if such an instruction had been given, defendant has not established that the outcome of his trial would have been different, given the overwhelming evidence supporting his guilt of the charged crimes.

Defendant next argues that defense counsel was ineffective for failing to challenge inaccurate information in his presentence investigation report (PSIR) at sentencing. Defendant claims that he was never shown the PSIR before sentencing in order to alert defense counsel to the inaccuracies. However, defendant's claim is unavailing because he has not established that

-8-

the facts set forth in the PSIR are inaccurate or false. The description of the offense in the PSIR accurately describes Hernandez's original report of the incident to police, the officers' subsequent pursuit of the suspects, and defendant's eventual arrest. The fact that Esteban is not mentioned in the description of the offense does not make the information inaccurate as presented, given that Hernandez did not initially report to police that Esteban was present when the crimes were committed. Moreover, defendant cannot establish how defense counsel's failure to object to the alleged inaccuracies would have impacted the sentence he ultimately received. Therefore, defense counsel was not ineffective in this regard.[4]

Defendant also has not established that he did not have the opportunity to review the PSIR before sentencing. Defense counsel affirmatively stated on the record at sentencing that "*we've* had the full and fair opportunity" to read and review the PSIR and had no objections to the information therein. (Emphasis added). Defendant remained silent and offered no contradiction to defense counsel's statement. Accordingly, defendant's argument to the contrary on appeal is not supported by the record.

Lastly, defendant argues that defense counsel was ineffective for failing to inquire into the potential bias of two jurors who alerted court staff during trial that they knew two individuals to whom witnesses had referred at trial. One of the individuals mentioned was a witness's mother, and the other was the mother of one of defendant's children. The decision to keep a juror on the jury panel—and not challenge or request removal of the juror—is a matter of trial strategy. See *People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008). Here, neither of the individuals who the jurors claimed to know testified at trial or were directly involved as a victim or perpetrator of the charged crimes. Their credibility, therefore, was not at issue. Additionally, this information did not come to light until after the jury was sworn and trial had commenced. In explaining why he lodged no objection to keeping one of the jurors empaneled, defense counsel stated that the jury had been attentive during trial. Thus, defense counsel may have believed that it was in defendant's best interest to move forward with the jury as empaneled. We presume that counsel's decision not to request removal of the jurors or inquire further into the matter was sound trial strategy and find that counsel was not ineffective as alleged. See *id.*

---

[4] In fact, counsel might have decided that it was beneficial to his client not to insist on adding to the PSIR the fact that there was another victim—at whom defendant pointed a gun—present during the armed robbery and home invasion.

Finally, defendant raises a Sixth Amendment challenge based on *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). He argues that offense variable (OV) 4,[5] OV 9,[6] and OV 14[7] were scored based on facts not admitted by him or necessarily found by the jury. In *Lockridge*, 498 Mich at 364, our Supreme Court held that "the rule from *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), as extended by *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), applies to Michigan's sentencing guidelines and renders them constitutionally deficient." The Court held "to the extent that OVs scored on the basis of facts not admitted by defendant or necessarily found by the jury verdict increase the floor of the guidelines range, i.e. the defendant's 'mandatory minimum' sentence, that procedure violates the Sixth Amendment." *Id.* at 373-374. As a result, the Court remedied the constitutional violation by severing MCL 769.34(2) to the extent it made the sentencing guidelines mandatory, and it found that the recommended minimum guidelines range was merely advisory. *Id.* at 364.

The prosecution concedes, and we agree, that OV 4, OV 9, and OV 14 were scored on the basis of facts not admitted by defendant or necessarily found by the jury. That is, by convicting defendant of the charged offenses, the jury was not required to find beyond a reasonable doubt that a victim suffered a psychological injury, MCL 777.34; that more than one victim was placed in danger of physical injury or loss of life, MCL 777.39; or that defendant was the "leader in a multiple offender situation," MCL 777.44. By scoring each of these variables at zero points, defendant's recommended minimum guidelines range is altered. Thus, judge-found facts were impermissibly used to increase the floor of the sentencing guidelines range, establishing a Sixth Amendment violation. *Id.* at 388-389. Defendant is, therefore, entitled to a remand based on the procedure articulated in *Lockridge* for the trial court "to determine whether [it] would have imposed a materially different sentence but for the constitutional error." *Id.* at 397. This remand, described by our Supreme Court as a "*Crosby*[8] remand" requires that the trial court:

> should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by law, if it decides to resentence the defendant.

---

[5] OV 4 addresses psychological injury to the victim, and should be scored at 10 points if a "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a).

[6] OV 9 pertains to the number of victims "placed in danger of injury or loss of life or property," and should be scored at 10 points when "2 to 9 victims [are] placed in danger of physical injury or death . . ." MCL 777.39(1)(c).

[7] OV 14 addresses the offender's role in the instant offense and should be scored at 10 points where the defendant "was a leader in a multiple offender situation." MCL 777.44(1)(a).

[8] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

Further, in determining whether the court would have imposed a materially different sentence but for the unconstitutional constraint, the court should consider only the "circumstances existing at the time of the original sentence. [*Id.* at 398 (citations and quotation marks omitted).]

We affirm defendant's convictions, but remand for further sentencing proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher