*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ALEXIS CHRISTINE WELSH,

      Defendant-Appellant.

UNPUBLISHED
June 18, 2019

No. 341519
Saginaw Circuit Court
LC No. 17-043726-FC

Before: METER, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

Defendant was convicted by jury of two counts of conspiracy to commit assault with intent to murder, MCL 750.83, MCL 750.157a, and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. She was acquitted of two counts of assault with intent to murder, one count of discharge of a firearm from a vehicle, and one count of discharge of a firearm at a building. The trial court sentenced defendant, as a second habitual offender, MCL 769.10, to serve concurrent sentences of 20 to 40 years' imprisonment for each conspiracy conviction, and two years' imprisonment for each felony-firearm conviction. Defendant appeals as of right. We affirm her convictions, but remand for resentencing.

Defendant, Brandon Grace and Hannah Grace, their mother, Megan Gloude, Carl Wardell, Jr., and Destinie Wardell agreed to drive by a home where they thought that an individual named "DT" lived to kill him in retaliation for the death of their acquaintance. The group drove by the home twice. On at least the last of the two drive-bys, there were a number of people socializing on the porch, including the owner of the home, Sonnet Berrian, three other adults, and two children. Brandon Jones, Berrian's fiancé, was inside the residence. Defendant discharged her weapon, but it did not fire. The group drove by a third time, and at least five shots were fired, including shots fired by defendant. No one was injured.

# I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence was insufficient to support her convictions based on the doctrine of transferred intent. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). The due process clause, US Const, Am XIV, requires that evidence of every element of a crime be proven beyond a reasonable doubt to sustain a criminal conviction. *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979), citing *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). To determine if the prosecutor produced evidence sufficient to support a conviction, this Court considers "the evidence in the light most favorable to the prosecutor" to ascertain " 'whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010), quoting *People v Hardiman*, 466 Mich 417, 429; 646 NW2d 158 (2002). Direct and circumstantial evidence, as well as all reasonable inferences that may be drawn, are considered to determine whether the evidence was sufficient to sustain the defendant's conviction. *Hardiman*, 466 Mich at 429.

Defendant argues that the evidence was insufficient to convict her of conspiracy to commit assault with intent to murder Berrian and Jones. " 'A conspiracy is a partnership in criminal purposes.' " *People v Blume*, 443 Mich 476, 481; 505 NW2d 843 (1993) (citation omitted). Conspiracy is a specific-intent crime that "requires both the intent to combine with others and the intent to accomplish the illegal objective." *People v Mass*, 464 Mich 615, 629; 628 NW2d 540 (2001). "[T]here must be proof demonstrating that the parties specifically intended to further, promote, advance, or pursue the unlawful objective." *People v Justice (After Remand),* 454 Mich 334, 347; 562 NW2d 652 (1997). It is not necessary that each defendant have knowledge of all the ramifications of a criminal conspiracy. *People v Hunter*, 466 Mich 1, 7; 643 NW2d 218 (2002).

Here, defendant was convicted of conspiracy to assault with intent to murder Berrian and Jones. The elements of assault with intent to commit murder are: (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. *Ericksen*, 288 Mich App at 195-196. Thus, the prosecutor was required to prove that defendant intended to combine with others to commit an assault with the intent to kill Berrian and Jones, and that she had the intent to accomplish an assault with intent to murder Berrian and Jones.

Defendant points out that the express agreement was limited to killing DT, and asserts that there was no express evidence that the group had agreed, or that defendant was a part of an agreement, to assault Berrian and Jones with an intent to murder them. However, a conspiracy may include an implied agreement between two or more persons to commit an unlawful or criminal act. *People v Barajas*, 198 Mich App 551, 553; 499 NW2d 396 (1993). " '[D]irect proof of the conspiracy is not essential; instead, proof may be derived from the circumstances, acts, and conduct of the parties.' " *People v Lowery*, 274 Mich App 684, 693; 736 NW2d 586 (2007), quoting *Justice*, 454 Mich at 347. When multiple assailants coordinate an attack, it is reasonable to infer that they entered into a conspiracy. *People v Carter*, 415 Mich 558, 568; 330 NW2d 314 (1982), overruled on other grounds in *People v Sturgis*, 427 Mich 392; 397 NW2d 783 (1986); *Callanan v United States*, 364 US 587, 593-594; 81 S Ct 321; 5 L Ed 2d 312 (1961).

The evidence indicated that the actions of defendant and her cohorts were not aimed at DT only. Hannah drove the group in Gloude's vehicle. Brandon testified that the group drove by Berrian's home to observe it. At that point, they had one gun. Then they obtained Gloude's gun. Brandon and Hannah both reported that everyone in the vehicle knew that they were going to drive by the subject home, and shoot at it. The group passed the house again and, according to Berrian, she was on her front porch with five other individuals when the vehicle passed. According to Hannah and Brandon, defendant attempted to shoot at the home, but her gun would not fire. Despite the fact that there was more than one person on the porch, and therefore people on the porch who could not have been DT, defendant asked Hannah to drive by the home again. Brandon testified that defendant requested that Wardell, Jr. give her some bullets, and Brandon heard the ammunition magazines removed from the guns. Brandon stated that the vehicle passed the home again, and five shots were fired before guns held by defendant and Wardell, Jr. jammed. Berrian thought that six shots were fired.

Thus, despite no evidence of a verbal agreement to attempt to kill Berrian and Jones, the actions of the participants established an implied agreement to assault them with an intent to murder. Defendant was a part of the group that stated that its intention was to murder DT by shooting at the subject home. Defendant was a part of the group that, according to both Hannah and Brandon, had one gun, and collected another, with all participants knowing that they were driving by the house to discharge the guns. This was after the group first viewed the home, possibly with Berrian and the others on the porch. The group, including defendant, drove by the home a second time when people were on the porch, and defendant shot towards the residence, but was foiled by a faulty gun. Berrian was on the porch, saw the vehicle, and heard the vehicle occupants yelling at the people on the porch. Defendant directed Hannah to return to the home while performing maintenance on a weapon, the group returned, and opened fire. There was no evidence that DT was at the home, or that defendant's group saw DT among the occupants of the home as they prepared to assault it. Rather, the coordinated activity of defendant and her cohorts demonstrated that they had at least implicitly agreed to assault the occupants of the home by shooting at them, regardless of whether they included DT. This agreement was confirmed by Hannah and Brandon, who stated that everyone in the vehicle knew that they were going to drive by the home and shoot at it. Berrian unequivocally indicated that a number of people were on the porch during the drive-by when the shooting took place. Thus, while the desired target may have been DT, the evidence supported an inference that the intent was to shoot at the home, and whoever might be present.

Defendant argues that the theory of transferred intent is inapplicable to a conspiracy charge. "[T]he doctrine of transferred intent . . . provides: 'Where one intends to assault a certain person, but by mistake or accident assaults a different person, the crime so committed, if any, is the same as though the person originally intended to be assaulted had been assaulted.' " *People v Hurse*, 152 Mich App 811, 813; 394 NW2d 119 (1986), quoting CJI 17:1:05. However, for purposes of the sufficiency question, it is unnecessary to determine whether the doctrine of transferred intent would apply to a crime of conspiracy. The evidence and reasonable inferences demonstrated beyond a reasonable doubt that the group, including defendant, agreed to assault the occupants of the home by shooting at them, some of whom they had presumably viewed on the porch before the assault. The intent to kill may be inferred from the use of a deadly weapon. *People v Henderson*, 306 Mich App 1, 11; 854 NW2d 234 (2014), citing *People v Carines*, 460 Mich 750, 759; 597 NW2d 130 (1999).

## II. JURY INSTRUCTIONS

Defendant next argues that the trial court erred when it instructed the jury that defendant's conspiracy with regard to an intent to murder one individual could be transferred to a charge of conspiracy with intent to murder others. We agree, but find no cause to reverse.

Jury instructions are reviewed "in their entirety to determine if there is error requiring reversal." *People v McFall*, 224 Mich App 403, 412; 569 NW2d 828 (1997). This Court reviews claims of instructional error de novo. *People v Perez*, 469 Mich 415, 418; 670 NW2d 655 (2003). The trial court's "determination whether a jury instruction is applicable to the facts of the case" is reviewed for an abuse of discretion. *People v Heikkinen*, 250 Mich App 322, 327; 646 NW2d 190 (2002), citing *People v Perry*, 218 Mich App 520, 526; 554 NW2d 362 (1996), aff'd 460 Mich 55 (1999). " 'An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes.' " *People v Russell*, 297 Mich App 707, 715; 825 NW2d 623 (2012) (quotation omitted).

A defendant has the right to "a properly instructed jury." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995). "[T]he trial court is required to instruct the jury concerning the law applicable to the case and fairly and fully present the case to the jury in an understandable manner." *Id*. There must be evidence to support jury instructions about the "elements of the charged offenses and any material issues, defenses, and theories." *People v McKinney*, 258 Mich App 157, 162-163; 670 NW2d 254 (2003). There is no error where the instructions "fairly presented the issues to be tried and sufficiently protected the defendant's rights." *McFall*, 224 Mich App at 412-413.

Defendant was not charged with conspiracy to commit assault with intent to murder DT. Among other charges, she was charged with conspiracy to commit assault with intent to murder Berrian and Jones, and assault with intent to murder Berrian and Jones. When instructing the jury on the assault charges, the trial court stated that "[i]f the defendant intended to assault or kill one person, but by mistake or accident killed or assaulted another person, the crime is the same as if the first person had actually been killed or assaulted." The court did not discuss intended targets while instructing the jury on the conspiracy charges. During deliberations, the jury asked whether the "transfer effect" could apply to a thought, and asked for instructions regarding the conspiracy charges, stating: "We understand what it is, but I'm personally having trouble convicting someone of two counts, two counts of conspiracy with assault with intent to murder [Jones] and [Berrian], when, if they did conspire, it was about one person, DT." The trial court stated to trial counsel that a conspiracy involved an intent to combine with others and an intent to accomplish the crime, here murder, and the object of the conspiracy can be transferred to the people who were targeted by it. The trial court then informed the jury that "transferred intent can apply to a conspiracy charge. It's up to all of you to decide if it applies to conspiracy charges in this case."

The "gist" of a conspiracy is the unlawful agreement, *Mass*, 464 Mich at 632, and the charged crime that led to defendant's conviction was the agreement to assault Berrian and Jones. "A criminal agreement is defined by the scope of the commitment of its co-conspirators," *Justice*, 454 Mich at 347, and the express agreement between defendant and her cohorts initially was to kill DT. In *Blume*, 443 Mich at 481-483, while discussing whether the evidence was

sufficient to support that an agreement was made, the Court relied on *People v Atley*, 392 Mich 298, 314; 220 NW2d 465 (1974), overruled on other grounds as stated in *Hardiman*, 466 Mich at 428-429, that "[t]he ultimate fact of intent to sell might be inferred, but not agreement to sell," in a situation where a defendant was hired to harvest marijuana for another defendant, who had expressed an intent to sell the marijuana. Similarly, the intent to assault Berrian and Jones with the intent to kill could be inferred by transferring the intent of defendant and the group to kill DT, but *the agreement* to assault them should not have been inferred from the intent to kill DT.[1] Because conspiracy and the underlying crime are separate and distinct, "a conviction of conspiracy does not merge with" the underlying offense. *Carter*, 415 Mich at 569

In *Mass*, 464 Mich at 632, citing *People v Denio*, 454 Mich 691, 712; 564 NW2d 13 (1997), the Court noted that "it has 'repeatedly held' that conspiracy is separate and distinct from the substantive crime that is its object." In *Mass*, the Court stated that while considering the effect of the actual amount of cocaine distributed in a conspiracy to deliver a specific amount, more than 225 grams but less than 650 grams, the "defendant and his coconspirators possessed the specific intent to combine to deliver the *statutory minimum as charged* to a third person." *Id.* at 629-630, citing *Justice*, 454 Mich at 349. In the circumstances of a drug distribution conviction, it was required that the conspiracy included proof of the specific illegal act, the specific amount of drugs, rather than allowing the underlying crime to determine the amount agreed on. Thus, because the conspiracy crime is separate from the assault crime, and focuses on the agreement, the conspiracy crime should be limited to the scope of the agreement, and the trial court erred by informing the jury that transferred intent could apply to a conspiracy charge.

However, even if the instruction was given in error, defendant would have to demonstrate that giving the instruction was not harmless error. *People v Cornell*, 466 Mich 335, 362-363; 646 NW2d 127 (2002). In order to reverse, a defendant must demonstrate that the instructional error "undermined reliability in the verdict." *Id.* at 363-364 (citations omitted). Here, one juror questioned whether transferred intent could be utilized to demonstrate the conspiracy to assault Jones and Berrian. However, the evidence was sufficient to establish that defendant participated in a conspiracy to assault Jones and Berrian, without transferred intent. While denying defendant's motion for judgment notwithstanding the verdict, the trial court stated that the conspiracy began with an intent to murder DT and that intent may have been transferred to Berrian and Jones, but there was also evidence of an agreement to murder Berrian and Jones because the assailants had driven by them once, and returned to shoot at them. As the trial court noted, the verdict was established by the evidence, despite the erroneous instruction. Thus, the instructional error did not undermine the reliability of the verdict.

---

[1] Again, however, where there was evidence that defendant and the group would have known that there were other occupants in the house given that they would have seen them on the porch, and the implicit agreement was to go through with shooting at the house knowing various individuals were there, the jury would not have had to reach the issue of transferred intent to convict defendant. The problem arises simply because the jury raised the question regarding transferred intent.

## III. EXTRANEOUS JUROR INFLUENCE

Defendant argues that a juror, identified as Davis, should have been excused from the jury because she introduced extrinsic evidence into deliberations that likely affected the jury. We disagree.

A trial court's decision to remove a juror is also reviewed for an abuse of discretion. *People v Tate*, 244 Mich App 553, 559; 624 NW2d 524 (2001). This occurs when the trial court's decision is outside the range of principled outcomes. *Russell*, 297 Mich App at 715.

At the beginning of the fifth day of a five-day trial, while the jury was deliberating, the trial court reported that it received a telephone message from a juror identified as Scherzer, regarding another juror ascertained to be Davis, stating that Davis knew one of the people mentioned in the trial. The trial court questioned Scherzer, who disclosed that Davis knew DT through friends, and knew the ages of the conspirators, but did not discuss this knowledge beyond the fact that she knew DT. Scherzer explained that Davis had informed the bailiff that she knew DT, and Scherzer had asked Davis whether this was true. Scherzer was concerned because she speculated that Davis might know other people who were friends with DT. Scherzer had some discomfort because she did not want people related to the activities of the case to know that she was involved as a juror, but she testified that the information would not affect her decision-making as a juror. Scherzer speculated that a juror who was dismissed due to health complaints may have been affected by the disclosure. The trial court and the prosecutor indicated that defense counsel had previously thought that Davis's knowledge was not an issue because he did not think that the DT involved in the case was the same DT that Davis knew. They were reportedly from different areas.

Davis testified that she did not have information about the case that she had disclosed to jurors. She explained that the jury had overheard her report to the bailiff that she knew DT, and she had affirmed a question from another juror about whether she knew DT, and where he was from. Davis reported that she had not seen DT in 18 months, did not know that he had died, and had no knowledge of the individuals involved in the case, including defendant. Davis testified that no one had spoken to her about the case before she was a juror. She thought that another juror had a personal issue with her because they were not agreeing on things. Davis interjected that she was the juror who posed the question about transferred intent. Davis testified that knowing DT would have no effect on her opinion of the case.

The trial court questioned each remaining juror. All were aware that Davis knew someone by the name of DT, but were not aware of any further discussions about DT. They indicated that this knowledge did not have any effect on their ability, or the ability of other jurors, to be fair and impartial. Juror 11 and Juror 13 indicated that Davis stated that she thought that DT was a bad person, but juror 13 did not know if the other members of the jury heard this comment. The trial court did not find any basis to excuse Davis from the jury, noting that each juror stated that Davis's knowledge of DT was "just something she mentioned in passing," and "did not make any difference to them." The trial court further remarked that it was ridiculous to consider replacing Davis given the jurors' responses indicating that Davis's comments would not impact their decision-making, and the fact that the parties had earlier discussed Davis's knowledge of a "DT," and determined that it did not sound like the same person.

A defendant has a "right to a fair and impartial jury" with jurors who only deliberate about "the evidence that is presented to them in open court." *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). A defendant is deprived of his "rights of confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment" when the jury considers extraneous facts not introduced into evidence. *Id*. The nature of the accusation of influence on the jury "determines whether the allegation is intrinsic to the jury's deliberative process or whether it is an outside or extraneous influence." *Id*. at 91. Because Davis's knowledge of DT did not emanate from the trial process, it was extrinsic. "In order to establish that the extrinsic influence was error requiring reversal, the defendant must initially prove two points. First, the defendant must prove that the jury was exposed to extraneous influences," and second, "that these extraneous influences created a real and substantial possibility that they could have affected the jury's verdict." *People v Fletcher*, 260 Mich App 531, 541; 679 NW2d 127 (2004), quoting *Budzyn*, 456 Mich at 88-89.

The trial court's questioning of the jurors revealed that they believed that Davis had known DT because she informed the bailiff of this in their presence, and she confirmed this information when asked. Thus, the jury was exposed to an extraneous influence. It is not clear that the entire jury was exposed to the thought that DT was a bad person because only two jurors apparently heard this statement. However, the first prong was satisfied.

To prove the second point, the defendant must generally "demonstrate that the extraneous influence is substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict." *Fletcher*, 260 Mich App at 540; *Budzyn*, 456 Mich at 89. The Court in *Budzyn* provided factors to consider in determining "whether the extrinsic influence created a real and substantial possibility of prejudice":

> (1) whether the material was actually received, and if so how; (2) the length of time it was available to the jury; (3) the extent to which the juror discussed and considered it; (4) whether the material was introduced before a verdict was reached, and if so at what point in the deliberations; and (5) any other matters which may bear on the issue of the reasonable possibility of whether the extrinsic material affected the verdict. [*Budzyn*, 456 Mich at 89 n 11.]

Defendant states that one juror was upset that Davis knew DT. This assertion is based on Scherzer's speculation that the juror sought to be excused because she was upset, rather than because of her reported medical problem. Defendant further states that the information must have affected the jury, but she does not elaborate on any reason why Davis's previous knowledge of DT would have had an impact on the verdict. Davis informed the trial court early in the proceedings that she knew someone named DT, the parties determined that it was uncertain whether Davis knew the same DT that was mentioned in the case, and Davis did not discuss DT with the jury beyond confirming that she knew him, and muttering in the presence of two other jurors that he was a bad person. Davis did not know any of the participants in the trial, including defendant, other conspirators, or victims. DT's role in the case was limited. He was identified as the target of the shootings in retaliation for his possible involvement in the death of the conspirators' friend. Davis did not testify that she had a relationship with DT, just that she had known him, but had not seen him in 18 months, and did not even know that he had died. This information does not establish that Davis having known DT influenced the jury's deliberations.

Jurors are " 'presumed to be impartial' " until shown otherwise, and the "burden is on the defendant to establish that a juror was not impartial or at least that the juror's impartiality is in reasonable doubt." *People v Miller*, 482 Mich 540, 550; 759 NW2d 850 (2008) (citation omitted). Defendant could speculate that Davis's knowledge of DT could have encouraged her to protect him by convicting his enemies. However, Davis's involvement with DT amounted to dated knowledge of him, and a supposition that he was related to the facts of the case. The trial court meticulously investigated whether this information would impact her personal deliberations or the other jurors' deliberations. The jurors, including Davis and Scherzer, assured the trial court that the extrinsic information was not significant to them, and it would not be a factor in their deliberations. There is no evidence to the contrary. Thus, the trial court did not abuse its discretion by retaining Davis on the jury.

## IV. IRRELEVANT EVIDENCE

Defendant next argues that evidence that she was in a gang should not have been admitted because it was irrelevant. We agree that the evidence was arguably irrelevant, but its admission was not plain error.

To preserve an "evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001) (citations omitted). Defendant failed to object to the admission of evidence establishing that she was in a gang, so this issue is not preserved for appeal. Unpreserved evidentiary claims are reviewed for plain error affecting substantial rights. MRE 103(d); *Carines*, 460 Mich at 763. Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant, or if "the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Carines*, 460 Mich at 763 (quotation marks omitted).

A photograph from Wardell, Jr.'s telephone showed him with defendant, and said "money side gang," and "flex game strong, my right hand, never wrong." Defendant's nickname was "Flex," and Detective Bryant Greenert stated that the photograph had a symbol for a gang called "gang," or "squad gang." Another photograph showed Wardell, Jr. with an unidentified person making hand gestures, and bore the phrase "white boys killen em." Wardell, Jr. said that the gestures were not gang signs, and the phrase was a reference to clothing. Thus, Wardell, Jr.'s possible involvement in a gang with defendant was referenced in one photograph, was supported by Greenert's testimony, and Wardell, Jr.'s possible display of a gang sign was depicted in another photograph. Both photographs were admitted without objection.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401; *People v Sabin (On Second Remand)*, 242 Mich App 656, 656-657; 620 NW2d 19 (2000). "Under this broad definition," evidence that is useful in shedding light on any material point is admissible. *Aldrich*, 246 Mich App at 114. The prosecution argues that the gang evidence was relevant to demonstrate the relationship between defendant and Wardell, Jr., which was motivation to commit a crime together, and motivation for Wardell, Jr. to be reluctant to testify against defendant. Relevant evidence includes the complete story of the crime, including "the full context in which disputed events took place." *People v*

*Sholl*, 453 Mich 730, 741-742, 556 NW2d 851 (1996). Arguably, evidence that defendant and Wardell, Jr. were in a gang together may have had some relevance to demonstrate that the nature of their relationship was to protect each other, and because it provided the jury with additional information about Wardell, Jr.'s motivation to resist freely testifying. The credibility of a witness is relevant. *People v Mumford*, 183 Mich App 149, 152; 455 NW2d 51 (1990).

However, to be relevant, "the matter sought to be established by the evidence must be 'in issue.' " *People v McKinney*, 410 Mich 413, 418; 301 NW2d 824 (1981). Here, there was no other evidence presented, and no arguments made, that a gang affiliation had anything to do with the crime. There was no evidence that defendant's friend for whom the group sought revenge was killed as part of a gang dispute, that DT was in a rival gang, or that any of the victims of the shootings were related to any gang activity. Prior to the admission of the photographs and gang testimony, the prosecutor established that Wardell, Jr. referred to defendant as his "right hand," and they were best friends. Thus, their close relationship had already been established. Had defendant's trial counsel objected to the admission of evidence that defendant was in a gang, it might have been sustained. Even where motive is relevant, not all evidence that is "remotely connected with the accused or his social acquaintances is admissible to show motive." *People v Wells*, 102 Mich App 122, 129; 302 NW2d 196 (1980).

Defendant argues further that the evidence should have been excluded because its minimal probative value was substantially outweighed by its prejudice. Relevant evidence may be excluded under MRE 403 if " 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' " *People v Watkins*, 491 Mich 450, 477, 481; 818 NW2d 296 (2012), quoting MRE 403. Unfair prejudice occurs when there is a tendency for the evidence to be "given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Wilson*, 252 Mich App 390, 398; 652 NW2d 488 (2002), citing *People v Mills*, 450 Mich 61. " '[U]nfair prejudice' does not mean 'damaging.' " *Lewis v Legrow*, 258 Mich App 175, 199; 670 NW2d 675 (2003). Evidence that is unfairly prejudicial goes beyond the merits of the case to inject issues broader than the defendant's guilt or innocence, such as "bias, sympathy, anger, or shock." *People v McGhee*, 268 Mich App 600, 614; 709 NW2d 595 (2005) (quotation marks omitted).

The evidence of defendant's gang affiliation had little probative value because the affiliation was irrelevant, and there was other evidence regarding the nature of defendant's relationship with Wardell, Jr. Conversely, evidence that defendant was in a gang, or associated with others in a gang, may have provoked the jurors' suspicion regarding the propensity of gang members to commit crimes and engage in violence. "Gangs generally arouse negative connotations," and there is a possibility "that a jury's negative feelings toward gangs will influence its verdict." *United States v Irvin*, 87 F3d 860, 865-866 (CA 7, 1996).[2] Evidence that defendant was in a gang went beyond the merits of the case, and could have impacted the jury.

---

[2] Although lower federal court rulings are not binding on this Court, they may be considered persuasive. *People v Johnson*, 292 Mich App 583, 595 n 3; 808 NW2d 541 (2011).

However, an evidentiary error does not merit reversal in a criminal case unless, after review of the case, it appears that it is "more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). Further, with plain error review, reversal is warranted only if the plain error resulted in the conviction of an innocent defendant, or if "the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Carines*, 460 Mich at 763. Here, the jury acquitted defendant of a number of crimes, including assault with intent to murder, which is evidence that the jury did not necessarily believe that defendant was guilty, even though they knew that she was in a gang. Further, the gang testimony regarding defendant was limited to one image with Wardell, Jr., and no other mention or argument regarding gang affiliation was in the record. The gang evidence was a very minor aspect of the case. In contrast, two witnesses to the crime, Brandon and Hannah, testified specifically and extensively regarding defendant's involvement in the shootings. Thus, the errant admission of evidence that defendant was in a gang with Wardell, Jr. was not outcome determinative or plain error.

## V. SENTENCING

Lastly, defendant argues that the trial court improperly assessed offense variable (OV) 6 and OV 12 when it sentenced defendant. We agree that the court improperly assessed OV 6, and defendant is entitled to a remand for resentencing.

"A party shall not raise on appeal an issue challenging the scoring of the sentencing guidelines or challenging the accuracy of information relied upon in determining a sentence that is within the appropriate guidelines range unless the party has raised the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals." *People v Jackson*, 487 Mich 783, 791; 790 NW2d 340 (2010) (emphasis omitted), quoting MCL 769.34(10); see also MCR 6.429(C). Here, defendant's trial counsel discussed the assessment of OV 12 with the trial court, and agreed that it was correctly assessed at 25 points. Defendant argued that OV 6 should have been assessed at zero points. Ultimately, the trial court assessed defendant 50 points for OV 6, and 25 points for OV 12. Thus, only the assessment of OV 6 is properly preserved for appeal.

This Court reviews the trial court's factual determinations at sentencing for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. See also *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165, 167 (2017). Unpreserved claims are reviewed for plain error affecting substantial rights, *Carines*, 460 Mich at 763, as provided above.

### A. OV 6

Defendant argues that the trial court improperly assessed OV 6 at 50 points. We agree.

OV 6 considers "the offender's intent to kill or injure another individual," and is assessed at 50 points where:

The offender had a premeditated intent to kill or the killing was committed while committing or attempting to commit arson, criminal sexual conduct in the first or third degree, child abuse in the first degree, a major controlled substance offense, robbery, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, or kidnapping or the killing was the murder of a peace officer or a corrections officer[.] [MCL 777.36(1)(a).]

OV 6 is assessed at 25 points where "[t]he offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." MCL 777.36(1)(b). OV 6 is assessed at zero points where "[t]he offender had no intent to kill or injure." MCL 777.36(1)(d). Notably, "[t]he sentencing judge shall score this variable consistent with a jury verdict unless the judge has information that was not presented to the jury." MCL 777.36(2)(a).

As a threshold matter, MCL 777.22(1) directs a trial court to assess OV 6 for "homicide, attempted homicide, *conspiracy* or solicitation *to commit a homicide*, or assault with intent to commit murder" (emphasis added). A "homicide" is defined as "any crime in which the death of a human being is an element of that crime." MCL 777.1. The elements of assault with intent to commit murder are: (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder, *Ericksen*, 288 Mich App at 195-196, and the elements of conspiracy are: (1) defendant intended to combine with another person; and (2) the participants intended to accomplish an illegal objective. *Mass*, 464 Mich at 629. The death of a human being is not an element of either crime. Therefore, the crime of conspiracy to commit assault with intent to murder is not a homicide crime.

However, a conspiracy to commit an assault that, if successful, would have been murder is not the same as conspiracy to commit murder. The Legislature determined that conspiring to assault where the assault could have produced a death is a separate crime from conspiring to commit a crime that results in a death. The list of crimes in MCL 777.22(1) ("homicide, attempted homicide, conspiracy or solicitation to commit a homicide, or assault with intent to commit murder) distinguishes homicide from assault with intent to murder, and explicitly does not include conspiracy to commit assault with intent to murder as a crime that requires the trial court to assess OV 6. Thus, OV 6 cannot be assessed for conspiracy to assault with intent to murder convictions, and was inaccurately assessed in this case. Defendant should have been assessed zero points for OV 6 based on the plain language of MCL 777.22(1). Therefore, defendant is entitled to a remand for resentencing.

B. OV 12

Defendant also argues that OV 12 was incorrectly assessed at 25 points. We find no error.

OV 12 considers felonious criminal acts that were contemporaneous with the sentencing offense, and 25 points are assessed when "[t]hree or more contemporaneous felonious criminal acts involving crimes against a person were committed." MCL 777.42(1)(a). Ten points are assessed when "[t]wo contemporaneous felonious criminal acts involving crimes against a person were committed." MCL 777.42(1)(b). The felonious criminal acts are contemporaneous

-11-

if the act occurred within 24 hours of the sentencing offense, and will not result in a separate conviction. MCL 777.42(2)(a). "[W]hen scoring OV 12, a court must look beyond the sentencing offense and consider only those separate acts or separate behavior that did not establish the sentencing offense." *People v Light*, 290 Mich App 717, 723; 803 NW2d 720 (2010). A defendant should be assessed zero points for OV 12 where "[n]o contemporaneous felonious criminal acts were committed." MCL 777.42(1)(g).

Defendant was convicted of two counts of conspiracy, MCL 777.18, and was acquitted of two charges of assault with intent to murder, which are crimes against a person. However, the jury's acquittal means that the evidence for the assault was not beyond a reasonable doubt, whereas the trial court need only determine that a preponderance of the evidence supported that defendant committed "[t]hree or more contemporaneous felonious criminal acts." MCL 777.42(1)(a). The sentencing court has discretion to determine the number of points assessed, provided that a particular score is adequately supported by record evidence. *People v Dickinson* 321 Mich App 1, 21; 909 NW2d 24 (2017).

Here, a preponderance of the evidence supported the determination that defendant assaulted with intent to murder at least three people. While sentencing defendant, the trial court stated that defendant shot at a number of people, including children, as the vehicle that she was in drove by the subject home. Berrian testified that she, three adults, and two children were on the porch when the vehicle went by, and shot at them. Jones said that he was inside the home next to his son when a bullet entered a nearby room. Brandon said that he witnessed and heard five shots come from defendant's position in the vehicle, and Hannah said that she saw defendant sitting outside the window, shooting from the top of the vehicle, as they drove by the house. Thus, a preponderance of the evidence supported the court's conclusion that defendant committed at least three contemporaneous felonious acts, and OV 12 was properly assessed at 25 points.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that the performance of his trial counsel was deficient in that he did not object to the assessment of OV 12. To preserve a claim of ineffective assistance of counsel, the defendant must move in the trial court for a new trial, or request a hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Defendant failed to do so. Unpreserved claims of ineffective assistance of counsel are limited to review for errors apparent on the record. *People v Unger (On Remand)*, 278 Mich App 210, 235; 749 NW2d 272 (2008). The constitutional question of whether an attorney's ineffective assistance deprived a defendant of his Sixth Amendment right to counsel is reviewed de novo. *Id*. at 242.

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This right to counsel encompasses the right to the effective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). To establish a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defense. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). A counsel's performance is deficient if it fell below an objective standard of professional

reasonableness. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Here, the trial court properly assessed OV 12 at 25 points. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201, citing *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000). Therefore, defendant did not receive ineffective assistance of counsel when defense counsel failed to object to the assessment of OV 12.

## VI. RESENTENCING

When the trial court's error in assessing OV 6 is corrected, defendant's total OV score is reduced by 50 points. This changes the guideline sentencing grid relied on by the trial court. "A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). A trial court relies on inaccurate information when it sentences a defendant by consulting an inaccurate advisory guidelines range. *Id*. at 89 n 7. Resentencing is required where a scoring error alters the appropriate guidelines range. Id. at 89-90. Because the trial court will have to resentence defendant, we do not reach defendant's argument that her sentence was disproportionate.

Affirmed and remanded for resentencing. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Michael J. Kelly